THE STATE, EX REL. EASTERN TELEPHONE AND TELE-
GRAPH COMPANY, RELATOR, v. BOARD OF PUBLIC
UTILITY COMMISSIONERS, RESPONDENT.

Argued November 6, 1913—Decided February 24, 1914.

1. The determination by the board of public utility commissioners that the territory through which a telephone and telegraph company propose to extend its service is now adequately served by another telephone and telegraph company, and that the proposed new service was not necessary for the public convenience nor to conserve the public interest, is a finding of fact which will not be disregarded or reviewed on application for *mandamus* to compel the commissioners to approve the proposed plans for extension, if there be any evidence to support the finding.

2. The general power given to municipalities to grant permission and consent to telephone and telegraph companies to erect poles for the purpose of telephone or telegraph operation, is subject to the power of the legislature to impose further limitations and conditions and to enact that no privilege or franchise shall be valid unless, in addition to such consent, the approval be had of a board of commissioners created for such purpose.

3. The power of the board of public utility commissioners is not limited, by the statute, to supervising the execution of the permission and consent granted by a municipality, but includes the power to determine whether the privilege or franchise granted by the municipality is necessary for the public convenience and properly conserves the public interests.

Application for the allowance of a writ of *mandamus*.

Before Justices SWAYZE and BERGEN.

For the relator, *James Collins Jones* (of the Philadelphia bar) and *McCarter & English*.

For the respondent, *Frank H. Sommer.*

The opinion of the court was delivered by

BERGEN, J.   The question involved in this case is the legality of an order of the board of public utilities refusing its approval of two franchises granting relator the privilege of constructing telephone and telegraph lines in the streets of two municipalities of this state.   The application relates to two distinct municipalities, and as the same question was raised they were argued together without objection.   One of the grants was made by the board of chosen freeholders of the county of Cape May, giving, by ordinance, consent and permission to the relator to erect poles, string wires, lines and cables for the purpose of operating a telegraph and telephone exchange.   The other ordinance was adopted by the borough of Avalon, granting a like permission in the borough.

The ordinance adopted by the board of chosen freeholders of the county of Cape May gives its consent and permission to the relator to erect such poles and wires on certain roads and highways in the county of Cape May, naming them.

The other ordinance passed by Avalon gives a like consent to be exercised upon all the "public roads, streets and highways of the borough of Avalon."   This ordinance contained the condition that the party line shall never exceed four subscribers on any one line.   It is not disputed but that these ordinances were duly passed and accepted.

The relator filed with the utility commission a petition reciting the proceedings before the board of chosen freeholders of Cape May county, reciting the terms of the ordinance and praying that the privilege or franchise granted

by the said board of freeholders be approved by the utility commissioners. A like petition was filed by the relator reciting the ordinance passed by Avalon and praying a like approval by the state board. The record also contains a stipulation that the return of the public utility commissioners shall be considered the agreed state of facts upon which the application for *mandamus* shall be argued. This report shows that the commissioners found as a fact that the territory, through which it is proposed to extend the relator's telegraph and telephone lines, is now adequately served by a telephone company, and upon such finding adjudged that neither of the proposed lines were necessary and proper for the public convenience, and that they would not properly conserve the public interests, and therefore refused approval. As there was evidence to support the finding of fact that the proposed telephone and telegraph lines were not necessary and proper for the public convenience and to properly conserve the public interests, that question of fact we cannot review.

Therefore, the question seems to be reduced to this: whether, upon such a finding, the commission has the power, under the statute creating it, to withhold its approval? The relator argues that because certain statutes authorize municipalities to grant the permission and consent to erect poles for the purpose of telephone or telegraph operations, the power of the utility board is limited to supervising the exercise by the relator of the power conferred upon it by the municipalities. It is very earnestly argued by the relator that the success of a telephone company depends upon its development and that to arrest its extension interferes with its success, but that is a question which should properly be addressed to the legislature, for if the law as now enacted prevents that measure of success, which the promoters of telephone lines desire, we can but administer the law. The hardship it entails, if any, can only be corrected by the legislature. The relator further argues that the right to erect poles in the public highways is now fixed by law and that when permission is given, the political subdivisions of the

state are under a duty to designate the highways to be oc-cupied by a local telephone company and that can be en-forced by appropriate judicial proceedings. This may be granted, and yet the legislature has the power to impose fur-ther restrictions or limitations upon the powers delegated to municipalities, and the question is whether it has done so by the act creating the board of public utilities, approved April 21st, 1911 (*Pamph. L.* 374), section 24 of which declares "no privilege or franchise hereafter granted to any public utility as herein defined, by any political subdivision of this state, shall be valid until approved by said board."

Therefore since the adoption of this statute the grant of such privilege or franchises by a municipality is not valid unless approved by the board of public utility commissioners. No one would contend that if, when the act authorizing the granting of these franchises was adopted, it contained a pro-vision that no such franchise should be valid until approved by a board, or by any other state agency selected for that purpose, such limitation would not have been good. and if so the legislature may by a subsequent act limit the effect of such power. Section 24 also provides that the "approval is to be given when the board determines that such privilege or franchise is necessary for the public convenience and prop-erly conserves the public interests." By the terms of this act the board is not required, nor authorized, to approve until it determines that the privilege for which approval is sought, is necessary and proper for the public convenience, and in this case the board have found that such condition does not exist. It is argued that it would be absurd to in-terpret this act as conferring a power upon the board to prevent the municipality from making any designation what-soever. With this we do not agree. The right to use the public streets and highways by these private corporations is derived from the legislature, and they have the power to say that while a municipality may grant a franchise, it shall not be valid until approved by the board. We can see noth-ing absurd or unreasonable in this, for the legislature could have refused it if application was required to be made to

it, and it has a right to appoint agents to determine for it whether proposed constructions are necessary and proper for the convenience of the public and the conservation of its interests, especially when they add an additional burden to public easements.

The application for *mandamus* is denied, with costs.