# CASES

IN

# THE SUPERIOR COURT

OF

# PENNSYLVANIA

## Relief Electric Light, Heat and Power Company's Petition.

*Constitutional law—Police power—Pennsylvania Public Service Commission—Act of July 26, 1913, P. L. 1374.*

The Public Service Commission Act of July 26, 1913, P. L. 1374, is a proper exercise of the police power of the State and is constitutional.

Grants of franchises to public service corporations are made and accepted in subordination to the police power of the State, which cannot be bargained away by the legislature.

The fact that a light, heat and power company has secured the consent of borough authorities to the use of the borough streets, does not relieve it from the necessity of securing a certificate of public convenience from the Public Service Commission; and if such certificate is denied it cannot complain that it has been deprived of its property without due process of law, or that the order of the Commission is an impairment of the obligation of a contract.

An order of the Public Service Commission refusing a certificate of public convenience to a light, heat and power company to occupy the streets of a borough, although the borough authorities have consented to such use, will be sustained where it appears that another company was serving the borough satisfactorily at fair and reasonable rates; and especially will such order be upheld where it appears that the second company had not recorded its charter in the county where its business was to be transacted, prior to the passage of the Public Service Commission Act, and that at the time it applied for the certificate it had not complied with Section 2 of the Act of May 16, 1889, P. L. 228, which re-

quires such corporations in good faith to carry on their work and construct or acquire their necessary building, etc., within a space of two years from the date of their letters patent.

Argued Dec. 6, 1915.   Appeal, No. 42, April T., 1916, by Relief Electric Light, Heat and Power Company, from order of the Public Service Commission at No. 312 Municipal Contract Docket, 1914, refusing certificate of public convenience.   Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Petition for certificate of public convenience.

The petition was as follows:

That your petitioner is a corporation formed for the purpose of supplying electric light and electric power to persons and corporations within the Borough of Washington.   It being the further purpose of the associates forming this company to supply electric light and electric power to the Borough of East Washington, which joins and is commercially a part of the Borough of Washington, an additional corporation was formed under the name of the East End Electric Light, Heat and Power Company, it being proposed and intended that the Relief Electric Light, Heat and Power Company and the East End Electric Light, Heat and Power Company will operate from the same plant and lines.   The whole district which this company proposes to serve through itself and its subsidiary is shown on map Exhibit A hereto attached and made a part of this petition.

It is proposed to establish a central light and power plant of best modern design in Washington or its immediate vicinity, with an initial capacity of two thousand K. W., with ample room for additional plant, as the business may warrant.   Your petitioner proposes to supply two-phase and three-phase electric current of seventy-two hundred alternations, and at voltages suitable for the various requirements of the consumers.   It

is believed that a plant of this kind, conveniently located will be able to obtain considerable electric light and power business, at fair rates, due to its ability to generate economically, and to give that certainty of continuous service and closeness of regulation which are the two prime factors in any successful operation.

In supplying this service, the company will compete with the West Penn Lighting Company, a Pennsylvania corporation, whose principal office is in the City of Pittsburgh, upon whom notice of this application was duly served as appears by return hereto attached.

The petitioner was incorporated under charter dated June 26, 1912.

By ordinance of the Borough of Washington approved the 26th day of May, 1914, a copy whereof is hereto attached, marked Exhibit B, petitioner secured the consent of the local authorities.

Petitioner is advised and believes that it has authority under said charter and local consent to proceed and exercise its charter rights to furnish electric current for light, heat and power to persons and corporations within the territory covered by said charter, subject, nevertheless, to the approval by your Commission of the terms and conditions prescribed in the ordinance granting said local consent.

On the 17th day of February, 1914, your petitioner presented its petition to your Commission under Paragraph 2 of Rule 36 for a declaration by the commission of the terms and conditions upon which it would grant its approval of a contract between the Borough of Washington and this petitioner in the same terms as are expressed in the ordinance hereto annexed, but on presentation of the petition your commission expressed the desire that the petitioner withdraw its application for the time being and renew it after the local consent had been obtained. The petitioner having complied with said request of the commission now submits itself to such order as may be proper under circumstances.

This application is made under Section 11, Article III of the Public Service Company Law.

It therefore prays that the terms and conditions contained in said ordinance may be considered and approved and that a certificate of public convenience may issue authorizing it to proceed to perform the service contemplated by its charter and said ordinance.

The West Penn Lighting Company intervened, and filed an answer in which it stated that it had been serving the Borough of Washington for a number of years at just and reasonable rates.

Testimony was taken before the commission, and an order was made refusing to grant a certificate of public convenience to the petitioner.

*Error assigned* was the order of the commission.

*Andrew M. Linn* and *Thos. Patterson,* for appellant. —While the State has the unquestionable power to regulate the manner of the use by a corporation of its property, so far as it may injuriously affect others, it cannot under the pretense of making police regulations, repeal the company's charter and revoke its franchises or deprive it of any of the essential rights conferred by its charter: Sharpless v. Mayor of Philadelphia, 21 Pa. 147; Com. v. Penna. Canal Co., 66 Pa. 41.

*William N. Trinkle,* for appellee.—The act is constitutional: Mugler v. Kansas, 123 U. S. 623; Com. v. Powell, 127 U. S. 678.

Appellant was not a corporation under the Act of May 8, 1889, when Section 11, of Article 3, of the Public Service Act became part of its charter: Guckert v. Hacke, 159 Pa. 303; Braddock Borough v. Penn Water Co., 189 Pa. 379.

*W. E. Crow* and *David I. McCahill,* for West Penn Lighting Co., Intervenor.

OPINION BY KEPHART, J., March 1, 1916:

This is on appeal from an order of the Public Service Commission.

The appellant received letters patent on June 26, 1912, empowering it to furnish light, heat and power within the Borough of Washington, Pennsylvania. No tangible property or estate was acquired by this company under its charter rights. An ordinance permitting it to occupy the streets of the Borough of Washington was secured. In accordance with the Public Service Company law, this company made application to the commission for an approval of the ordinance as granted and for permission to establish its work pursuant to the provisions contained in its application for charter, which had been approved by the governor but not recorded in the county where the business was to be transacted before the act was passed. The Public Service Commission, after due hearing, withheld approval of the borough ordinance and denied the appellant permission to occupy the streets of the borough to establish its business. This, in substance, is the strongest statement of facts in appellant's favor from which we are asked to solve the questions involved in this appeal.

Appellant contends that the certificate of public convenience should issue to it as a matter of right; that no power lies in the legislature to enact laws providing for the regulation of utility companies; that in the denial of such certificate it has been deprived of its property without due process of law, and the order is an impairment of the obligation of a contract.

The general purposes of the act have been recognized as being within the grasp of legislative control. The authority of the legislature comes from its inherent right to exercise certain police powers as an inalienable function of government. This power, while most generally considered as being applicable to laws affecting health, morals and public safety, has, by judicial decisions, been extended to embody regulations such as ex-

pressed in the public service act; it has been held to in-
clude regulations for the comfort and convenience of
the public, the common good as involved in the general
prosperity, or the general public welfare: C., B. & Q. R.
R. v. Illinois, 200 U. S. 561; Halter v. Nebraska, 205
U. S. 34; Ottis v. Parker, 187 U. S. 606.

"Property does · become clothed with a public inter-
est when used in a manner to make it of public conse-
quence, and affect the community at large.    When,
therefore, one devotes his property to a use in which the
public has an interest, he, in effect, grants to the public
an interest in that use and must submit to be controlled
by the public for the common good.   To the extent of the
interest he has thus created, he may withdraw his grant
by discontinuing the use, but so long as he maintains the
use he must submit to the control": Munn v. Illinois, 94
U. S. 113.   "While the police power has been most fre-
quently exercised with respect to matters which concern
the health, safety or morals, we have frequently held
that corporations engaged in a public service are subject
to legislative control so far as becomes necessary for the
protection of public interest": Louisville & Nashville
R. R. v. Kentucky, 161 U. S. 677, 695; Georgia Railroad &
Banking Company v. Smith, 128 U. S. 174; New York,
&c., v. Bristol, 151 U. S. 556; Richman v. Consolidated
Gas Co., 186 N. Y. 209.   It may be said in a general way
that the police power extends to all the great public
needs.   It may be put forth in aid of what is sanctioned
by usage or held by the prevailing morality, or in aid of
health, safety or comfort, or by strong and preponderant
opinion to be greatly and immediately necessary to pub-
lic welfare or the regulation of commerce of public utili-
ties:  Noble State Bank Co. v. Haskell, 219 U. S. 104.

The underlying principle is that business of certain
kind holds such a peculiar relation to the public inter-
est that there is superinduced upon it the right of pub-
lic regulation.   We cannot agree with appellant's con-
tention that in Pennsylvania the police power is to be

exercised only when no injustice shall be done to the incorporators as provided in Section 10 of Article XVI. This section of the Constitution does not relate to the general power inherent in government to make police regulations, nor should the power to make such regulations be thus circumscribed unless it was clearly apparent that such was the intention of the section in question. The same Constitution expressly provides that the police power in the legislature shall not be abridged. The reasons so frequently given for the existence of this supreme power in legislative hands need not be here repeated. It is sufficient to say that such power can only be taken away from the legislature by constitutional enactments clearly and definitely expressing that purpose.

The legislature does not surrender its right to regulatory control of public service corporations in the grant of a franchise to such corporation: Wilcox v. Consolidated Gas Company, 212 U. S. 19. It is a well-recognized principle of legislation that grants of franchises are made and accepted in subordination to the police power of the State, which cannot be bargained away by the legislature: Penna. Railroad Company v. Electric Company, 152 Pa. 116; Com. v. Jones, 4 Pa. Superior Ct. 362; Powell v. Penna., 127 U. S. 678; Mugler v. Kas., 123 U. S. 623.

That franchises are granted subject to regulatory control in the interest of the general public welfare, is shown by the last two decisions sustaining the Kansas Prohibition laws, and the Pennsylvania Oleomargarine law, and others enforcing regulation of common carriers, warehouses and many other enterprises. The State having the right to exercise a police power over utility companies, such right is a continuing one. Therefore, the general scope of the Public Service Act is a valid exercise by the legislature of the police power regulating public service companies, and does not violate any provision of the Constitution of this State or of the

United States. The power to regulate and control belongs to the legislature and by it may be delegated to a commission: Stanislaw County v. San Jocquin, 192 U. S. 201; Railroad Commission cases, 116 U. S. 307, 336; Atlantic Coast Line v. North Carolina Comm., 206 U. S. 1. Generally as to the scope and effect of the power, when once exercised, for legitimate reasons, it has been established by the courts that the inhibition of the Federal Constitution upon the impairment of contract obligations, or deprivation of property without due process of law, or equal protection of the laws by the states, is not violated by the legitimate exercise of this legislative power of police regulation: Penna. R. R. Co. v. Ewing, 241 Pa. 581. "The governmental power of self-protection cannot be bargained away, nor can the exercise of the rights granted nor the use of property be withdrawn from the implied liability to governmental regulation": Northeastern Pacific R. R. Co. v. Duluth, 208 U. S. 581-583. "One, whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter: Knoxville Water Co. v. Knoxville, 189 U. S. 434"; Hudson County Water Co. v. McCarter, 209 U. S. 349. Uncompensated obedience to a regulation enacted for the public welfare or safety under the police power of the State, is not a taking of property without due compensation or process of law: New Orleans Gas Company v. Drainage Co., 197 U. S. 453.

Property right, as such, is then no barrier to the reasonable execution of the police power, as illustrated by the Oleomargarine and Prohibition cases. Where its destruction is a mere incident to the enforcement of the law enacted in the interest of health, morals and safety, &c., it is not the destruction of property rights that courts must guard against, but whether the law does conserve and protect the public welfare, and whether that public welfare is of such consequence as to demand

the imposition of this the most powerful of governmental prerogatives.

While this is true when the destruction of property is a mere incident to the enforcement of the law, but where the law recognizes the continuation of a business as not being against public welfare, and seeks only to control its method and administration, such regulation and control must not be effected so as to work confiscation or destruction of property.   In cases of regulation and limitation, the courts will review the reasonableness of the order or regulation and in so determining will inquire whether property has been taken without due process of law or contract rights have been violated unreasonably.   The power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation: Stone v. Farmers, &c., 116 U. S. 307, 331.   Concerning the duty of the courts with respect to this question, it was stated in Chicago, Etc., Railway Co. v. Minn., 134 U. S. 418, 457, in which case an attempt was made to deprive courts of the power to investigate the reasonableness of the regulations made by commissions, the statute as construed by the Supreme Court of Minnesota "conflicts with the Constitution of the United States......It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice." And, in the same opinion, reaffirmed in Chesapeake, Etc., Telephone Co. v. Manning, 186 U. S. 238, "The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness both as regards the company and as regards the public, is eminently a question for judicial

investigation, requiring due process of law for its deter-
mination. If the company is deprived of the power of
charging reasonable rates for the use of its property,
and such deprivation takes place in the absence of an
investigation by judicial machinery, it is deprived of the
lawful use of its property, and thus, in substance and
effect, of the property itself, without due process of law,
and in violation of the Constitution of the United
States." The Public Service Act expressly provides for
an appeal to the courts. By Section 17 of Article VI,
any party to the proceedings affected may appeal to this
court. Sections 22 and 24, of the same article provide
that the court, upon the record as certified by the com-
mission, shall determine whether or not the order ap-
pealed from is reasonable and in conformity with law;
and the 18th section of the same article stipulates that
the record shall include the testimony, findings of fact, a
copy of all orders, and a copy of the opinion. The duty
is imposed on this court to examine all matters presented
to the commission, but the burden is nevertheless on the
appellant to show that the commission acted unreason-
ably or without evidence or contrary to the manifest
weight of the evidence.

(1) Was the denial of the certificate of public con-
venience to engage in the business of furnishing elec-
tricity in the borough a reasonable exercise of the regu-
latory control over a utility corporation; and, (2) was
the appellant by the act of the commission deprived of
its property without due process of law, or was there an
impairment of the obligation of a contract?

(1) The Public Service act requires public utility
companies to apply to the commission for a certificate
of public convenience, and such certificate shall be given
only "if and when the said commission shall find or de-
termine that the granting or approval of such appli-
cation is necessary or proper for the service, accommo-
dation, convenience or safety of the public." The utility
in which this appellant desired to engage was the sale

of a commodity that can only be rationally dealt in by a monopoly. It cannot be likened to the sale of bread, milk and clothing. In the prosecution of its enterprise, the company must occupy certain streets with certain appliances, and the commodity to be sold, if not properly guarded, is highly dangerous. The company's equipment and the administration of its affairs require, for successful operation, certain conditions entirely unknown, in practice or theory, to the successful operation of the business of vending the ordinary commodities of life. As it is essentially monopolistic in character, by force of economic law it is advantageous that certain control be exercised to prevent the possibility of evil that may result from an unbridled monopoly. Unrestricted competition in such utilities has been, by experience, definitely shown to be ultimately unwholesome for the community. The invariable rule in such cases, in companies of this character, is that in addition to the cutting and destruction of rates and other practices entirely outside of the range of sound business, one company is absorbed and the surviving company recoups its loss through excessive charges, at the expense of an unprotected public. As stated in People v. Wilcox, 207 N. Y. 86, "It is the settled policy of the state, arising through an extended and instructive experience, to withdraw an unrestricted right of competition between corporations occupying, through special consents or franchises, the public streets and places, and supplying the public with their products or utilities which are wellnigh necessities." If the power to regulate does not include the power to prevent unrestricted competition, then much of the beneficial effect of the Public Service Act is lost. Unrestricted competition and regulation are inconsistent. Restricted competition, if there could be such a thing in such a place as was here applied for, would be utterly impracticable. The commission with all its powers could not reasonably control it. It is hardly necessary to say that if this business could be dealt in

generally by a large number of different concerns in competition, the streets and alleys in the municipality would be veritable death-traps for pedestrians.

Under the act, to some extent the commission directs the internal management of the utility company. It directs a system of accounts, passes upon a proposed issue of bonds and stock for betterments, extensions, and the like. Contracts, as provided in the act, are subject to its approval. A reasonably fair profit on the value of the property is allowed. Through this control certain assurances are inferentially given by the commission to the investing public with respect to the securities of these companies. Having thus undertaken to guard the public against unrestricted monopoly by limiting the prices that the existing company may charge for its commodity, and in certain respects regulating and controlling its business, it seems only right and proper that they should, by preventing unrestricted competition, take care of its financial integrity to such an extent at least that it should not be forced to become impoverished or lose a portion of its property because of the regulatory control exercised for the best interests of the public; and therefore, when the commission denied to this appellant the right to compete it was protecting and enforcing the rights of the public and performing a duty enjoined on it by the letter and spirit of the act of assembly, as well as by the mandate of the Federal Constitution that prohibits the taking of property without due process of law. The principle here discussed has been enforced by the Public Service Commissions in the States of Wisconsin, Indiana, Idaho, Michigan, New York, Massachusetts, California and other states with respect to utility companies. There was no attempt on the part of the appellant to satisfy the requirements of the statute as to necessity; while on the contrary the existing company, by evidence, showed that its service was satisfactory, its rates fair and reasonable, and its con-

duct such that no just complaint could be made against it.

(2) Admitting for a moment that the mere existence of a charter right and an ordinance from the borough, without performing any act in contemplation of the purposes there enumerated, were contracts, yet shortly after these rights were secured the Public Service law was passed and if the appellant had corporate authority or capacity to supply light, heat and power in the borough, that right or capacity was nevertheless subject to the regulatory control as it is conferred, under the police power upon the commission by the Public Service Act. It would indeed be a discrimination to hold otherwise. A going concern to enter into contracts or do other matters specified by the act must apply to the commission for a certificate of public convenience. If the corporation is not a going concern it is none the less a public service company under the act subject to regulatory control. If such corporation only became a public service company when it actually engages in the business for which it was incorporated, then the certificate of public convenience would not be necessary for the preliminary details unless it could be held that it would come under Section 2 of Art. III, which question we are not required to decide at this time. Section 12 of Article III cannot be so read as to give this appellant a privilege not enjoyed by private person or a going concern, and the language of the section "excepting as herein otherwise expressly provided" preserves in the act all the regulatory control over companies such as the power here discussed.

But it is our opinion that the charter right and ordinance of the borough unexercised were not such property rights, or such contracts that the refusal to give the certificate worked a taking of property without due process of law, and an impairment of the obligation of a contract. Under the Constitution of the State the right to alter any charter was retained. No injury could come to this corporation which had acquired no property and

no vested rights, but had merely a permission from the State to do something. Charters are subject to alteration or repeal, unless the party is deprived of property without due process of law. In Capital City Light and Fuel Company v. Tallahassee, 186 U. S. 401, 411, the court says, speaking with reference to the privilege granted by the City of Tallahassee for the use of its streets for lighting purposes, in an ordinance similar to the one before us: "Such grant does not become a contract or a vested right so as to be protected by the Constitution of the State or of the United States until the company has, to say the least, begun to do the thing required by the charter as a consideration for the grant of such privilege." Or, as stated by Mr. Justice BROWN in Pearsall v. Great Northern R. R. Co., 161 U. S. 646, in considering many cases bearing on the subject of privileges granted to corporations, such privileges to be guaranteed as contracts: "Must also be founded upon good consideration. If it be a mere nude pact, a bare promise to allow a certain thing to be done, it will be construed as a revocable license." See Philadelphia and Grays Ferry Co.'s App., 102 Pa. 123. The same doctrine was reiterated in the case of Louisville and Nashville Railways Company v. Kentucky, supra, and the case of New York Electric Line Company, 94 N. E. 1056, 201 N. Y. 321, where a charter had been granted to a corporation and the councils of the City of New York had granted certain privileges to this corporation. Subsequently the legislature created a commission to regulate and control the purposes for which the corporation was chartered, as they related to the highways of New York City. The commission refused to permit the corporation to enter the streets. It was held that the right acquired from the city was not a contract or a vested property right, such as the act of assembly infringed.

But this regulatory control by the commission in all its varied forms must not be an arbitrary one. The commission cannot, under the guise of regulation, arbitrarily interfere with the utility companies or impose upon

them unusual and unnecessary restrictions. They cannot capriciously exercise the functions lodged in them. The act is not intended to confiscate or destroy property, or to be a menace to the conduct of the affairs of utility companies by an undue exercise of the powers conferred by it. The duties of the commission are solely administrative in character and as such must be considered, and its acts should be unhampered by any other consideration, save the proposition that whatever is done is for the common welfare of the people of the State, as controlled by the constitutional mandate that property should not be taken without due process of law, and the principle as to reasonable profit to the company as enunciated in Wilcox v. Consolidated Gas Company, 212 U. S. 19, 48.

The appellant urges that it was a de facto corporation, having in good faith recorded its charter within a reasonable time after its incorporation; that it came to the commission with all the functions of a corporation, and therefore was not affected by the decision in Guckert v. Hacke, et al., 159 Pa. 303, and Braddock Borough v. Pennsylvania Water Co., 189 Pa. 379. That its corporate rights existed prior to the act, and therefore it had vested property rights with which the commission interfered. Whether it be regarded as a de facto corporation, an association in the nature of a partnership, or a bona fide corporation, in so far as the purposes of the act are concerned, it was brought within the intent and meaning of the act; but if its corporate rights, both of contract and of property, were to be controlled by its corporate existence, the recording of the charter was essential to such existence and the appellant having failed to record its charter it would have neither a vested right destroyed or the obligation of a contract impaired. Furthermore, it appears from the record that this corporation has not complied with Section 2 of the Act of May 16, 1889, which requires such corporations in good faith to carry on their work and construct or acquire their necessary buildings, structures, property or improvements within a space of two years from the date

of its letters patent.   While it has been held that the attorney general must move to forfeit lapsed rights such as these, nevertheless when it appears to a commission that such corporation is attempting to exercise such rights, its denial of a certificate of public convenience because of such an attempt would not be such an unreasonable exercise of its regulatory control as would warrant this court in interfering.   The commission should not be a party to what is manifestly an open violation of the law.   A careful review of the entire record convinces us that the order appealed from is reasonable and in conformity with law.

The assignments of error are dismissed and the order is sustained.

HENDERSON, J., dissents.