# Jenkins Township, Appellant, *v.* Public Service Commission.

*Appeals—Assignments of error—Order of Public Service Commission.*

On an appeal from an order of the Public Service Commission, the order must be assigned for error and quoted in the assignment.

In all such appeals the assignments must conform with the rules of the Superior Court. They must be self-sustaining and embody everything necessary to their determination in that court. A mere reference by page number to some part of the record essential to the assignment, or a general statement by counsel of the necessary elements of the assignment which does not embody the specific action of the commission will not be sufficient.

*Public Service Commission—Jurisdiction—Approval of municipal contract—Light, heat and power company—Corporations—Contract—Charter—Act of July 26, 1913, P. L. 1374—Police power.*

The Public Service Commission Act of July 26, 1913, P. L. 1374, is a proper exercise of the police power of the State and is constitutional.

Grants of franchises to public service corporations are made and accepted in subordination to the police power of the State, which cannot be bargained away by the legislature.

The fact that a light, heat and power company has secured the consent of borough authorities to the use of the borough streets, does not relieve it from the necessity of securing a certificate of public convenience from the Public Service Commission; and if such certificate is denied it cannot complain that it has been deprived of its property without due process of law, or that the order of the commission is an impairment of the obligation of a contract.

An order of the Public Service Commission refusing to grant to a light, heat and power company a certificate of public convenience and refusing to approve a contract with a borough, will be sustained, where it appears that the company in question had but a small capital, that it had not proceeded in good faith to carry on its work and construct its plant within the space of two years from the date of its letters patent, that it had not recorded its charter until five months after the date of the approval of the Public Service Commission Act, that the territory to be served was thinly settled, and was then being supplied by a company furnishing ade-

quate service at reasonable prices from a plant fully equipped for the purpose, and that the introduction of the proposed service was unnecessary. Such action on the part of the Public Service Commission is a proper exercise of the police power of the State.

*Municipal contracts—Advertisement—Proposal for public lighting.*

An advertisement for public lighting which stipulates for a Westinghouse metallic flame arc or "any other modern lighting system equally as good," is improper, inasmuch as the words "equally as good" do not admit of any competitive bidding, except on the lighting system named in the advertisement.

Argued April 20, 1916. Appeal, No. 40, March T., 1916, by plaintiff, from order of Public Service Commission Municipal Contract Docket No. 5, 1915, refusing to approve municipal contract in case of Jenkins Township and the Jenkins Twp. Electric Light, Heat & Power Co. v. Public Service Commission of Pennsylvania and the Citizens' Electric Illuminating Company. Before OR-LADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Petition to approve municipal contract.

JOHNSON, Commissioner, filed the following report:

The township of Jenkins, Luzerne County, Pa., through its solicitor, W. L. Pace, Esq., makes application to the Public Service Commission for the approval of a contract executed on the 21st of December, 1914, by the Township of Jenkins and the Jenkins Township Electric Light, Heat and Power Company. The board of supervisors of Jenkins Township at a meeting held December 14, 1914, directed the secretary of the board to advertise for bids for lighting the streets and alleys of the township for a period of two, three or five years from May 1, 1915, the date of the expiration of the then existing contract for street lighting. In pursuance of this resolution, the secretary advertised "for sealed proposals for lighting with electric light, or other illuminating medium, the streets, highways, lanes, alleys and other

public places of and in said township for a period of two, three or five years, from the expiration of the lighting contract, with 72, or more, Westinghouse metallic flame arc lamps, or any other modern lighting system equally as good."

Bids submitted were to be presented to the board of supervisors at a meeting to be held December 21, 1914, and at the meeting held upon that date the board of supervisors received two bids. One was from the Jenkins Township Electric Light, Heat and Power Company—a company that was incorporated in 1909, but which has not yet equipped itself with facilities for rendering service. The company has no generating station, but has erected some poles and wires in the township with a view to doing domestic lighting with current which it expects to obtain from the Lackawanna and Wyoming Valley Railroad Company, operating the electric railway popularly known as the Laurel Line. The offer of the Jenkins Township Electric Light, Heat and Power Company was to furnish and maintain the desired number of General Electric arc lamps at the following rates per lamp per annum: For a period of two years, $51; for a period of three years, $50; for a period of five years, $48. This company also made four other proposals, one for furnishing and maintaining Westinghouse metallic flame arc lamps at a rate per lamp per year of $49, $48, $47.50, for periods of two, three and five years, respectively. The other three proposals made by this company were to provide Mazda lamps of different candle power and different fixtures. One of these proposals was to furnish and maintain 250 candle power, type C Mazda lamps, with street hoods, at rates per lamp per year, of $40, $39 and $37, for periods of two, three and five years, respectively.

The other bid received by the board of supervisors for lighting the streets of Jenkins Township was submitted by the Citizens' Electric Illuminating Company—the company that was then furnishing the light under an ex-

isting contract. The offer of the Citizens' Electric Illuminating Company was to provide and operate 72 or more, arc lights at a rate of $45 each per annum, for a term of two, three or five years "in accordance with the specifications" in the advertisement, "and the contract conditions herewith." The phrase "contract conditions herewith" contained in the bid submitted referred to a draft of a contract which accompanied the bid and which specified that the lamps proposed to be furnished were "arc lights known as series luminous, or magnetite, the same as now being furnished and operated in the township by the company." The bid of the Citizens' Electric Illuminating Company upon General Electric luminous arc lamps was three dollars per lamp per annum lower than the bid of the Jenkins Township Electrict Light, Heat and Power Company upon that type of lamp.

At the meeting held upon the 21st of December, 1914, at which the two bids were opened, the board of supervisors by a divided vote decided to accept the offer of the Jenkins Township Electric Light, Heat and Power Company to supply 72, or more, 250 candle power, Type C, Mazda lamps with street hoods, for a period of five years, at the rate of $37 per lamp per annum; and the same evening a contract was executed by the township supervisors and by the officials of the Jenkins Township Electric Light, Heat and Power Company. The supervisors of Jenkins Township have applied to this commission for its approval of this contract. The Citizens' Electric Illuminating Company has petitioned the commission to withhold its approval of the contract, and both sides have presented testimony in support of their petitions.

In petitioning the commission to withhold its approval of the contract in question, the protestant alleges among other things, that the petitioner has, since August, 1904, provided a reasonable, adequate, sufficient, and satisfactory service to the public in Jenkins Township at just, reasonable and fair rate, and in the complete discharge of its duty as an electric company; that the company has

an efficient and modern plant with all modern facilities for serving the public; that the "illuminating unit, namely, two hundred and fifty candle power, type C Mazda lamps, for which bids were submitted and received by the board of supervisors and upon the basis of which the contract was awarded and entered into, is not of an illuminating power equal to Westinghouse metallic flame arc lamp, or to general electric arc lamps, but is of much less and inferior illuminating power and is an entirely different form of illuminant"; that the Township of Jenkins, which is approximately two miles by seven miles in area, and which had a population of 4,196, according to the census of 1910, does not present a commercially attractive field for one company, much less for two, and to permit another electric light company to enter and operate in this township would "work irreparable injury to your petitioner and its investment."

The following issues are raised by the petitions for and against the approval of this contract: (1) Were the bids in accordance with the specifications; (2) which of the two proposed lighting systems submitted would give the township a more effective lighting service for the same expenditure; and (3) is the approval by this commission, of the proposed contract "necessary or proper for the service, accommodation, convenience or safety of the public."

The board of supervisors in advertising for proposals for lighting the streets of the township specified that the lighting should be by "Westinghouse metallic flame arc lamps, or any other modern lighting system equally as good." The Citizens' Electric Illuminating Company offered to light the streets with series luminous or magnetite arc lamps, such as the company was then using in lighting the streets of the township. The testimony shows that the lamps in use were the four ampere magnetite lamp made by the General Electric Company. The bid accepted by the board of supervisors, and the contract submitted to this commission for approval pro-

vides that the Jenkins Township Electric Light, Heat and Power Company shall "install and furnish in and for said township 72, or more, 250 candle power, type C Mazda lamps, with street hoods." Thus neither the bid accepted by the township board of supervisors nor the bid submitted by the Citizens' Electric Illuminating Company contemplated the use of Westinghouse flame arc lamps. Both the bid accepted and the one rejected were covered by the clause, "or any other modern lighting system equally as good," contained in the specifications adopted by the board of supervisors, in calling for proposals for lighting. The bids of both companies were in accordance with these specifications.

As to the relative illuminating power of the four ampere luminous arc lamps and the 250 candle power type C Mazda lamp, each being equipped with hood, it was testified by Mr. E. L. Nash, an electric lighting expert called as a witness by the protestant, that "the four ampere lamps (at) an angle of 70 degrees yield seven hundred candles, the two hundred and fifty candle Mazda with street hood yields two hundred and fifty." (Record, p. 234.) Mr. Nash also stated that by the use of refractors "your two hundred and fifty candle Mazda lamp then yields four hundred and fifty candles at 10 degrees (below horizontal), and your arc lamp yields practically one thousand." (Record, pp. 240-41.) The installation of refractors, however, was required neither by the bid accepted by the board of supervisors, nor by the bid submitted by the protestant company. The bid that was accepted designated a lamp of 250 candle power, and the one that was rejected referred to a lamp of 700 candle power, this intensity of illumination being at an angle of 10 or 15 degrees below horizontal in the case of each lamp.

The four ampere luminous arc lamp has been on the market for several years; it is an efficient and satisfactory type of street lamp. This Commission In re Petition of the City of Pittston for the Approval of Street

Lighting Contract with the Citizens' Electric Illuminating Company (decided July 21, 1914), refers to this lamp as "one of several types of modern lamps that are in general use and giving satisfactory service in many cities." The testimony shows that, while the 250 candle power type C Mazda lamp is one of the latest types of lamps, it would require to provide a given amount of illumination an appreciably larger number of such lamps than would be required if four ampere luminous arc lamps were used. For an equal expenditure of money, the Township of Jenkins can secure more illumination from the four ampere luminous arc lamps at $45 per lamp per year than from type C Mazda lamps of 250 candle power at $37 per lamp per year.

The petition in this case raises a question of public policy that has been considered in passing upon several similar prior petitions. The Public Service Company Law of July 26, 1913, provides that the commission's approval of applications such as this "shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience or safety of the public." Does the evidence show that the approval of the contract now before the commission is necessary or proper for the service of the public?

The public necessity for the approval of the pending contract is not apparent from the evidence. For more than ten years, the commercial and street lighting in the Township of Jenkins has been done by a company fully equipped for the performance of the service required and amply able to make such extensions as may be needed. The complaints as to the services rendered by the company are of minor importance; and it may well be doubted whether a new company with more limited financial resources and with no experience in furnishing light would be able to serve the public as efficiently as it is now being served. The rates at which the company now in the field offers to continue the service of street lighting are

not high in comparison with the rates paid elsewhere for similar service, and are fully as reasonable as are the rates offered by the company desiring to enter the field.

Do the facts in this case warrant the commission in finding that the approval of the contract under consideration is proper for the service, accommodation and convenience of the public? Is it proper that the street lighting which the public in Jenkins Township needs and desires to obtain shall be secured by the introduction of a new company into the service? Would this be for the best interest of the public?

Jenkins Township is about fourteen miles square in area and has a scattered population which numbered only 4,196 when the census of 1910 was taken. The population is divided among five villages, one of which being several miles distant from the others is not included in the territory covered by the present or proposed street lighting service. The Citizens' Electric Illuminating Company, which now provides both the street lighting and commercial lighting, has been receiving about $4,600 a year for street lighting, and in 1914 obtained about $3,400 from 141 individual consumers of current. The gross revenues of the company in the township in 1914 were thus about $8,000. The company's offer to furnish street lighting in the future at $45 per lamp per annum would, if accepted, reduce the company's revenue $20 per lamp, or $1,440 per year. Based upon the business of 1914, the company's prospective gross revenue would be between $5,600 and $5,700. There is much force in the contention of the protesting company that there is not enough business in Jenkins Township to enable two companies permanently to operate successfully and provide good service at reasonable rates.

When services that may be rendered with profit only by one company are divided among two companies neither one of which can conduct its business at a profit, the services are quite certain to deteriorate. However,

the ultimate effect of unprofitable competition is a relatively high charge for a poor service.

In its decision In re Petition of Schuylkill Light, Heat and Power Company for approval of an Ordinance of the Borough of Ashland (Municipal Contract Docket No. 1), this commission took the position that:

"The passage of the Act of July 26, 1913, and of similar acts in nearly all of the other states indicates a general judgment that a reliance upon competition between public service companies for securing adequate service and proper rates has not been successful and that hereafter supervision by properly constituted authorities is to be substituted. Long experience has shown that while the temporary effect of competition between public utilities occupying the same territory is to secure lower rates, the final result is likely to be the absorption of one by the other and then an increase of rates to pay the expense of the warfare."

A similar view was expressed by the commission In re Petition of the Borough of Exeter for the Approval of a Franchise Contract Granted to the Consumers' Electric Company of the Borough of Exeter (Municipal Contract Docket, No. 34), and it was held In re Petition of the Borough of Avoca (Municipal Contract Dockets, Nos. 257 and 258) that the borough, which had a population of 4,600 was "not of sufficient size to sustain two systems of supply (for electric lighting) probably," and the commission was "unable to find that the approval of the proposed contract is 'necessary or proper for the service' of the public or likely to be of permanent benefit to the people of Avoca."

It is our opinion that the facts do not warrant the commission in finding the approval of the contract for street lighting entered into, on the 21st of December, 1914, by the Township of Jenkins, Luzerne County, and the Jenkins Township Electric Light, Heat and Power Company to be necessary or proper for the service, accom-

modation or convenience of the public. The approval is therefore withheld and the application dismissed.

After reargument, RILLING, Commissioner, reported inter alia, as follows:

While we concur in the conclusion arrived at in the report, yet having asked for a reargument upon the law points raised, with especial reference to the circumstance that the Jenkins Township Electric Light, Heat and Power Company was incorporated prior to the enactment of the Public Service Company Law, we think it is proper, and therefore will consider and pass upon that aspect of this case.

The question we are asked to pass upon might properly be stated as follows:

Where a public service company was duly chartered in our State prior to the enactment of the Public Service Company Law, has the commission created by said law the power or authority to restrain such chartered public service company from making a contract for lighting the streets of the municipality covered by its charter after such contract has been approved by such municipality?

The Jenkins Township Company claims that by reason of its having been chartered prior to July 26, 1913, and having been asked by Jenkins Township to bid for its street lighting, and having been awarded the contract, that it has the right to have said contract approved, notwithstanding the fact that there is already another public service company established in said township fully able to render the necessary public service therein and that to deny the said Jenkins Township Company the right to enter into such contract is an impairment of its chartered contract with the State as prohibited by the Constitution of the United States as well as the Constitution of Pennsylvania.

The authority which the commission seeks to exercise in this case is clearly the exercise of the police power inherent in our State as delegated to the commission by the provisions of the Public Service Company Law.

We concede that the charter granted to the Jenkins Township Electric Light, Heat and Power Company to do business in Jenkins Township is in the nature of a contract between it and the Commonwealth; but we think that such charter was granted to it by the State subject to certain constitutional provisions and that the said charter was accepted by the company and is held by it subject to such constitutional provisions, one of which is the inherent right of the Commonwealth in the exercise of its sovereignty to exercise the police power as set forth in Article XVI, Section 3, of the Constitution of Pennsylvania, as follows:

"The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well-being of the State."

We take it that it is not necessary at this time to enter upon any discussion as to the extent of this so-called police power, nor that the State by and through its general assembly delegated to this commission the right to exercise the same.

Order affirmed.

*Error assigned* was in making the order of the court, but not quoting it.

W. L. Pace, for Jenkins Township; *John J. O'Don-nell* and *E. E. Beidleman*, for Jenkins Township Electric Light, Heat and Power Company.—The powers of the commission cannot be extended beyond the plain words of the act of assembly by which said tribunal was created and in this connection should be governed by the rule, applicable to corporations, enunciated by the Supreme Court in the case of American Transfer Company's Petition, 237 Pa. 241.

Appellants respectfully contend that the legislature of Pennsylvania never intended that the Public Service

Company Law should be utilized or employed for the purpose of preventing free and open competition between or among regularly incorporated public service companies: Penn'a Utilities Co. v. Lehigh Navigation Electric Co., Vol. 2, Pa. Cor. Rep. 422; Com. v. Commissioners of Dauphin County, 23 Pa. C. C. R. 646; Porter v. Shields, 200 Pa. 241; York Water Co. v. York, 250 Pa. 115; People v. Union Gas & Electric Co., 98 N. E. 768.

The charter of the Jenkins Township Electric Light, Heat and Power Company was and is a contract between it and the Commonwealth of Pennsylvania, the obligation of which could not and cannot be affected or impaired by the Public Service Company Law, or the commission created thereby, and that said company's right or franchise to supply electricity for commercial and street lighting purposes in Jenkins Township being derived from the Commonwealth and exercisable at any time by entry upon the streets of said township under its power of eminent domain without the consent of the township: Allegheny County L. Co. v. Booth, 216 Pa. 564; American Transfer Co.'s Petition, 237 Pa. 241; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1; West Borough Boom Co. v. Penn Joint Lumber & Land Co., 121 Pa. 143; Dorrance v. Bristol Borough, 224 Pa. 464; Edison Electric Illuminating Co. v. Citizens Electric Co., 235 Pa. 492; Scranton L. & H. Co.'s App., 122 Pa. 154; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650.

The State having the right on July 21, 1909, to make the charter contract with appellant company said contract is protected against impairment by any pretended exercise of police power: Merion & Radnor Gas & E. Co. v. Radnor Twp., 39 Pa. C. C. R. 109; Erie City v. Erie Electric Motor Co., 24 Pa. Superior Ct. 77.

*William N. Trinkle,* for Public Service Commission.—— On an appeal the appellate court will review the findings, determination or order of the commission only so

far as to ascertain that the same is within the authority conferred upon such administrative tribunal by the act of assembly and is not an arbitrary exercise of the discretion so conferred, is not unsupported by the testimony and is not in contravention of law or constitutional limitations. The appellate court will not reverse or disturb such action by the commission merely because it might not agree with the wisdom thereof or because it might have reached a different conclusion from the evidence: Relief Electric Light, Heat & Power Co.'s Case, 63 Pa. Superior Ct. 1; People, ex rel., v. Wilcox, 207 N. Y. 86; Calumet Service Co., v. Chilton City, 148 Wisc. 334; State v. Great Northern R. R. Co., 153 N. W. 247; Pennsylvania Co. v. U. S., 236 U. S. 351; Grand Rapids & Indiana R. R. Co. v. Michigan R. R. Commission, 154 N. W. 15.

The power of the commission to regulate competition under the certificate of public convenience provisions of the act is a part of the police power confided to it by the legislature to regulate the service and rates of public service companies in this Commonwealth. To such police power the charters and charter contracts of all public service companies within the purview of said act are subject. No charter rights or property rights of such public service companies are unconstitutionally affected by the reasonable exercise of such power by the commission: Atlantic Coast Line R. R. Co. v. North Carolina Commission, 206 U. S. 1; Penna. R. R. Co. v. Braddock Electric Ry. Co., 152 Pa. 116; Mugler v. Kansas, 126 U. S. 623; Powell v. Com., 114 Pa. 265; Minneapolis & St. Paul R. R. Co. v. Emmons, 149 U. S. 364; Jacobson v. Massachusetts, 197 U. S. 11; Northern Pacific R. R. Co. v. State of Minnesota, 208 U. S. 583; Hudson County Water Co. v. McCarter, 209 U. S. 357; Noble State Bank v. Haskell, 219 U. S. 104; C. B. & Q. R. R. Co. v. Nebraska, Etc., R. R. Co., 170 U. S. 57; Penna. Water Co. v. Pittsburgh, 226 Pa. 624.

The Jenkins Township Electric Light, Heat and Power

Company, appellant in this case, is in no position to claim that the refusal of the certificate of public convenience impairs the obligation of any charter contract between it and the Commonwealth or unconstitutionally affects such charter or interferes with any vested privileges or franchises: Chester County Gas Co. v. Merion & Radnor Gas & Electric Co., 16 D. R. 214.

The Jenkins Township Electric Light, Heat and Power Company, appellant in this case, is in no position to claim that the refusal of the certificate of public convenience impairs the obligation of any charter contract between it and the Commonwealth or unconstitutionally affects such charter or interferes with any vested rights, privileges or franchises: Braddock Boro. v. Penna. Water Co., 189 Pa. 379.

*Ralph J. Baker,* with him *Frederick W. Fleitz,* for Citizens Electric Illuminating Co., Intervenor.—The legislature has provided that the findings of fact by the commission and the orders made thereon shall come into this court sustained, not only by the same presumptions which would arise on an appeal in equity: See Penna. R. R. Co. v. Philadelphia Co., 220 Pa. 100, but also by express statutory declaration; Grand Rapids & Indiana Ry. Co. v. Michigan R. R. Commission, 154 N. W. 15; West Jersey & Seashore R. R. Co. v. Board of Public Utility Commissioners, 94 Atl. 57; Interstate Tel. & Telephone Co. v. Board of Public Utility Commissioners (N. J. 1913), 86 Atl. 363.

The argument of the appellants wholly ignores what the intervener believes to be the imperative duty of the commission under this provision of law. It is submitted that the commission is thereby required to consider all contracts for street lighting, as well as franchise contracts, from all standpoints as they affect the public interests: Reynoldsville Borough v. Reynoldsville Water Co., 247 Pa. 26; West Jersey & Seashore R. R. v. Board of Public Utility Commissioners, 94 Atl. 57.

It is a reasonable regulation to prevent or discourage competition in public service.

The charter of the Jenkins Electric Light, Heat and Power Company was not such a contract on July 26, 1913, or January 1, 1914, that legislation restricting the same, or action of the commission under legislative authority constitutes an unconstitutional impairment of the obligation thereof: New York Electric Lines Co. v. Empire City Subway Co., 235 U. S. 179; People, ex rel., New York Edison Co. v. Wilcox, 207 N. Y. 87; Idaho Power & Light Co. v. Blomquist, 141 Pac. 1083.

The appellant company is not deprived of property without due process of law by the Act of 26th of July, 1913, or the order of the commission: Penna. R. R. Co. v. Philadelphia County, 220 Pa. 100.

The appellant company never had any contract with the State such as the one for which it claims protection: Texas & N. O. R. R. Co. v. Miller, 221 U. S. 408; Aspinwall v. Board of Commissioners of Daviess County, 63 U. S. 364.

OPINION BY KEPHART, J., October 30, 1916:

This is an appeal from an order of the Public Service Commission. The assignments of error, material to the determination of this case, are not within the rules of this court. The order of the commission, vital to the appellant's case, is not assigned for error, nor do the material assignments conform to Rule 14 of this court. In all appeals from the Public Service Commission, the assignments must conform to our Rules of Court; they must be self-sustaining and embody everything necessary to their determination in this court. A mere reference by page number to some part of the record essential to the assignment, or a general statement by counsel of the necessary elements of the assignment, which does not embody the specific action of the commission, will not be sufficient. As these appeals are of recent origin, we will consider the case on its merits.

Jenkins Township applied to the Public Service Commission for the approval of its highway lighting contract with the Jenkins Township Electric Light, Heat and Power Company. The material facts appear in the discussion of the several questions presented by the appeal of the Jenkins Company. We held in Relief Electric Light, Heat and Power Company's Petition, 63 Pa. Superior Ct. 1, that the general purpose of the Public Service law was within the control of the legislature; that the law was a valid exercise of the police power in the regulation of public service companies, and that such exercise did not impair the obligation of any contract, or deprive any person or corporation affected of property without due process of law, or of the equal protection of the laws. Property right, vested right, or contract did not bar this reasonable exercise of the police power. We further said that while this general proposition of law was true, where the destruction of property was but a mere incident to the enforcement of laws enacted in the interest of health, morals, safety and general public good, yet where the law recognizes the continuation of a business as not being against public welfare, but seeks only to control its method and administration, such control must not be effected so as to work confiscation or destruction of property. In cases of regulation and limitation, the courts will review the reasonableness of the regulation and in so determining will inquire whether property has been taken without due process of law or contract rights have been violated.

When the township made this application for a certificate of public convenience, as it was required to do by Section 11, of Article III, of the Public Service Law, this certificate could not be given unless the contract was necessary or proper for the service, accommodation, convenience or safety of the public. Under this authority the commission has a wide range for investigation. Each phase of the contract as it has relation to or affects the public, should be carefully scrutinized. The details of

the contract should properly protect and preserve public rights, property and safety. They should not create unjust discriminations against certain sections of the municipality to be served in favor of the serving company. The proposed service should be necessary for the accommodation of the public. Or, in other words, is there already adequate service at reasonable prices? Under this latter consideration the commission may, exercising a reasonable discretion, refuse the application even though such refusal may modify existing rights.

The evidence necessary for the proper enlightenment of the commission on these matters was present in this case, and the order appealed from is reasonable and in conformity to law.

The form of the advertisement was not conducive to securing the best return to the taxpayers for the money to be invested. It stipulated a Westinghouse metallic flame arc lamp or "any other modern lighting system equally as good." It is in the use of such language "equally as good" in advertising proposed contracts for public improvements that inferior materials, at excessive prices, from favored contractors, may be accepted, and the contract thus awarded. The aim desired was competitive bidding. There could be no competitive bidding except on the lighting system named in this advertisement.

It also appears from the evidence that the Jenkins company was wholly unequipped with proper facilities or generating plant to furnish the commodity. Assuming that the amount of its bond was added to its small capital, there was no evidence that the concern was financially responsible to meet the outlay necessary to fulfill the contract. According to the appellant's testimony, the service lines necessary to accommodate the contract would be approximately six miles, extending over a territory fourteen square miles. It was proposed by the Jenkins company to construct a plant sufficient to cover this territory with the necessary equipment on

its capital of $5,000. Since 1909, the year it received its charter from the State, this company had an opportunity to develop its plant. It is only after this alleged contract was awarded in 1914 that any effort was made by it, and that visible effort consisted in the erection of fifteen poles. This is at best a mere colorable construction, designed for the purpose of holding some right. The commission could not, under this state of facts, be charged with an unreasonable exercise of its powers in withholding its certificate. We do not say that this street lighting contract was being secured for speculative purposes, to be placed on the market to the company in the field at an attractive figure, but if contracts such as this were sustained under like circumstances, this condition could come about. It was plain from the evidence that this appellant company had not in good faith attempted to exercise its functions. These elements may enter into the commission's consideration of the application.

The commission found that the territory to be served was thinly settled and was then being supplied by a company furnishing adequate service at reasonable prices from a plant fully equipped for the purpose, and the introduction of the proposed service was unnecessary. For this and other reasons, the certificate was refused. Such action was a valid exercise of the police power. It did not, so far as the appellants are concerned, offend any of the provisions of the constitution above referred to, and it is only through such offense under the facts as are here presented that the Jenkins company may be heard to complain. As we stated in Relief Electric Light, Heat and Power Company's Petition, *supra,* at page 7, "The legislature does not surrender its rights to regulatory control of public service corporations in the grant of a franchise to such corporation: Willcox v. Consolidated Gas Co., 212 U. S. 19. It is a well-recognized principle of legislation that grants of franchises are made and accepted in subordination to the police power

of the State, which cannot be bargained away by the legislature: Penna. Railroad Co. v. Braddock Electric Ry. Co., 152 Pa. 116; Com. v. Jones, 4 Pa. Superior Ct. 362; Powell v. Penna., 127 U. S. 678; Mugler v. Kansas, 123 U. S. 623; Northern Pacific Ry. Co. v. State of Minnesota, 208 U. S. 583; Hudson County Water Co. v. McCarter, 209 U. S. 349-357; Noble State Bank v. Haskell, 219 U. S. 104; Manigault v. Springs, 199 U. S. 473. In Pennsylvania, since the Constitution of 1874, all charters are granted with the express condition that they may be altered, revoked or annulled whenever in the opinion of the legislature they "may be injurious to the citizens of this Commonwealth, in such manner, however, that no injustice shall be done to the corporators": Section 10, Article XVI. They were further subject to "the exercise of the police power of the State (which) shall never be abridged or so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well being of the State": Section 3, Article XVI. In Wagner Free Institution v. Philadelphia, 132 Pa. 612, the Supreme Court held that while "under the Constitution of the United States and the decisions of the Supreme Court a charter is ordinarily a contract," yet where, under such provisions of the Pennsylvania Constitution a charter was revokable at the will of the grantor, it "is only a quasi contract and approaches more closely to the character of a license. To such a charter the rule of the Dartmouth College case does not apply.......No question under the Constitution of the United States, therefore, arises in this case."

It will be seen that the rights of contract or otherwise received by this Jenkins company from the State were subrogated to the police power inherent in governments, not only by force of judicial decisions but through express constitutional direction. These so-called vested rights of contract and property were given and property acquired thereunder, subject to a possible exercise of the

power for the public good.   When so used through the public service law, it does not offend the constitutional mandate even though the exercise may, to a certain degree, affect property rights.   Though through the constitution and the public service law property may be subject to regulatory control and public service companies may not successfully urge a violation of any constitutional right, yet if the commission's orders are not warranted by the law itself or are arbitrary or unsupported by evidence, this court will grant relief.   Public service companies in appeals are not limited solely to constitutional grounds.   But where no right of property or contract could be affected and the commission has not acted arbitrarily, capriciously or without sufficient evidence, and the order made is within the statutory authority, it must be considered as final to this court.   As stated by the Supreme Court of the United States, "if the order made by the commission does not contravene any constitutional limitation, and is within the constitutional and statutory authority of that body, and not unsupported by testimony, it cannot be set aside by the courts, as it is only the exercise of an authority which the law vests in the commission": Pennsylvania Co. v. U. S., 236 U. S. 351-361; I. C. C. v. D., L. & W. R. R. Co., 220 U. S. 235; Los Angeles Switching Case, 234 U. S. 294; Houston v. East & West Texas R. Co., U. S., 234 U. S. 342-359.

This appellant company is further removed from the effect of the Federal constitution in that it had no tangible property and it was not a corporation under the law at the time the public service law was passed.   It had not recorded its charter until December 30, 1913,—the act was approved July 26, 1913,—and it had acquired no property until 1914.   The recording of its charter was essential to its corporate existence and at the time the public service law was passed it had neither a vested right nor a contract which could have been impaired by the public service law: Braddock Borough v. Penn Water Co., 189 Pa. 379; Guckert v. Hacke, et al., 159 Pa. 303.   With

this condition before it, under the public service law the Jenkins company was required to apply to the Public Service Commission for a certificate of public convenience "(b) to begin the exercise of any right, power, franchise or privilege."......And under Section 18, Article V, when application shall be made to the commission by such company for "permission from the commission to begin the exercise of any right, power or franchise ......such approval......shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience, or safety of the public." Under the act the commission may refuse in whole or in part the proposed application because conditions did not warrant or the public good demand its unqualified approval. Section 11, of Article III, still retains in the public service law all the regulatory control intended to be thereby exercised. One of the conditions which would warrant the commission's withholding the certificate of public convenience under the sections above referred to would be that the territory was already adequately served. By the terms of this act the commission is not required or authorized to approve the application until it determines that the privilege is necessary and proper for the public convenience, and for the conservation of public interest. Such finding being within the intent and spirit of the act, this court will not reverse because it may be of a different opinion. The petitioner, to establish the facts necessary for the approval of the contract, is met by the counterclaim of adequate service. The proposed contract was then not necessary "for the service......of the public." Such finding from sufficient evidence would be conclusive on the question of reasonableness, and such action would violate no right of contract or property, especially to a concern chartered and applying after the public service law was passed.

Generally on the question of adequate service by a

company already in the field, the Supreme Court, in
Pennsylvania Water Co. v. Pittsburgh, 226 Pa. 624, say:
"If anything be manifest it is that if two water mains be
laid side by side in the same street equally accessible to
the householders on each side conveying double the quan-
tity needed, with double sets of hydrants, pumping sta-
tions, offices, salaries, and expenses, one or the other
must be abandoned.    No community will pay double for
any article of necessity or luxury.    If the property
holder must by compulsory taxation support the munici-
pal system, he will not voluntarily support the private
corporation system; such a conflict of interest will in-
evitably bankrupt the system which depends on the vol-
untary patronage of the public.    We hesitate to assume
—every court is bound to hesitate long before assuming
—the legislature intends by grants to distinct corpora-
tions for public purposes, there shall arise such conflict
in the exercise of the franchises as will result in prac-
tical destruction of property of any citizen without com-
pensation."   And, in Duquesne Light Company v. City of
Pittsburgh, 251 Pa. 557: "The abuse of the surface of
city streets by frequent tearing up of the paving, caused
by ill advised planning of improvements is notorious,
and the effort in this instance upon the part of the city
to lessen this evil was certainly commendable.......The
public are relieved from the presence of a net work of
wires, placed upon the streets by a variety of companies,
that tend to constitute a serious hindrance in case of
fires, to say nothing of the unsightly disfigurement of the
streets."    See Calamut Service Company v. City of Chel-
ton, 148 Wisc. 334.    In Relief Electric Light, Heat and
Power Company's Petition, supra, on page 12, in connec-
tion with this subject, we mentioned the states which
had followed the doctrine here discussed, and in addi-
tion to those mentioned, the commissions of the follow-
ing states have so held: Missouri, New Jersey, Maine,
New Hampshire, Vermont, Illinois, Ohio, Nevada, Ari-
zona, Kansas, Georgia, Oklahoma and Maryland.    This

principle has been uniformly approved by the appellate courts: People, ex rel., New York Edison Co., v. Wilcox, 207 N. Y. 86; Weld v. Gas & Electric Light Commissioners, 197 Mass. 556; Idaho Power & Light Co. v. Blomqusit, 141 Pac. 1083; State, ex rel., Kansas City v. Kansas City Gas Co., 163 S. W. 854; Janicke v. Washington Mutual Telephone Co., 150 Pac. 633; Public Service Commission of Indiana v. State, ex rel., Merchants' Heat and Light Co., 111 N. E. 10; Eastern T. & T. Co. v. Board of Public Utilities Commissioners, (N. J.) 89 Atl. 924. The appellant's argument, based on so-called monopolies, does not meet the situation. Under Article II of the Public Service Act, the power is taken from public service companies "to enhance the price of commodities." The principle of common law monopolies has no application to public utilities which are now largely controlled by the public service law not only with respect to the price but as to all questions which may arise in connection with the service rendered. The company was controlled, in any attempt to make excessive charges or inferior service, by the power lodged in the Public Service Commission.

It is here important to remember that the application was made to the commission by the township. When the grant was made by the State to the Jenkins company it was a grant of the right to do a lighting business generally in the township. It did not grant a perpetual right to do business with the township authorities in the mode or form then in existence. The State has the absolute control over its subagencies of government (Commonwealth v. Moir, 199 Pa. 534; Bly v. White Deer Mountain Water Co., 197 Pa. 80-92) as well as of its highways and may not only change the method of letting its lighting contracts but may take the letting of such contracts from the municipalities. There could be no invasion of any right of the corporation, in requiring such contracts to be submitted to the commission for approval. The company did not "possess the inalienable right to

make a contract with the township through the authorities."

Another serious question is presented by this record. The letters patent of the Jenkins company were issued July 21, 1909. The Act of May 16, 1889, P. L. 241, provides that corporations must in good faith carry on their work and construct or acquire its necessary buildings, structures, property or improvements within the space of two years from the date of its letters patent. The contract under consideration was awarded December 21, 1914. For a period of four and one-half years this company made no effort to comply with the act of assembly. This act was a part of its organic law and was the limitation placed by the State on the grant contained in the letters patent. In the application for the certificate of public convenience the commission could consider the capacity of one of the contracting parties to make the contract. If an attempt was made to exercise powers not possessed, the commission could properly refuse to approve such contract, and if it was considered, their act could not be said to be unreasonable. It does not thereby declare a forfeiture or dissolution but simply applies its organic law to the existing facts.

After a careful consideration of the record, the order of the commission is affirmed, at the cost of the appellant.

ORLADY, P. J., and HENDERSON, J., dissent.