## Borough of Wilkinsburg, Appellant, v. Public Service Commission.

*Constitutional law—Public service corporations—Street railways —Contracts with municipalities—Rates.*

1. The enactment of the Public Service Company Law (Act of July 26, 1913, P. L. 1374) gave to the Public Service Commission "the power to inquire into and regulate the service, rates, fares, tolls or charges of any and all public service corporations" and is a valid delegation of the police power of the Commonwealth.

2. A contract with a public service corporation fixing rates for service, whether for a definite or indefinite period, has no binding force, when its terms conflict with the rates fixed in the method prescribed by the Public Service Company Law; and this is so even where there has been a limitation by a municipality of the rates to be charged by a public service company, contingent upon the consent of the municipality to the use of its streets.

3. The franchises of a street railway company conferred in accordance with Section 9 of Article XVII of the Constitution of Pennsylvania, providing that "no street passenger railway company shall be constructed within the limits of any city, borough or town-

ship without the consent of its local authorities," does not remove the subjects contained therein from the domain of legislative action. A general law, designed to affect all public service corporations, of the State, applies equally to companies operating under ordinances which regulate rates as a condition precedent to the consent of the municipality, or under franchises in which the rates are not so regulated.

*Constitutional law—Constitution of Pennsylvania—Police power —Constitution of the United States—Impairment of contracts.*

Section 9 of Article XVII of the Constitution of Pennsylvania, construed in connection with Section 3 of Article XVI of the same Constitution, providing that "the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State," does not deprive the State of authority to regulate the rates of public service corporations for the general welfare of its inhabitants. It, therefore, follows that when parties enter into a contract with a public service corporation, relating to rates, they are presumed to have done so with the knowledge that the right of the State to exercise this police power, in the future, is expressly reserved, and that, where the common weal and the interests of the public demand that the provision of the contract thus entered into shall be modified, it can be done without any violation of the provision of the Constitution of the United States with reference to the impairment of the obligation of contracts.

PORTER and HENDERSON, JJ., dissent.

Argued Dec. 4, 1918. Appeal, No. 71, April T., 1919, by Borough of Wilkinsburg, from the order of the Public Service Commission of Pennsylvania, Complaint Docket 1883, in the case of the Borough of Wilkinsburg v. The Public Service Commission of the Commonwealth of Pennsylvania on appeal, and The Pittsburgh Railways Company and James D. Callery, H. S. A. Stewart and Charles A. Fagan, Receivers of The Pittsburgh Railways Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

From the record it appeared that the Pittsburgh Railways Company, a public service company engaged in the

transportation of persons and property in Wilkinsburg, filed a schedule of rates with the Public Service Commission providing for an increase of fares. The Borough of Wilkinsburg then filed a complaint with the Public Service Commission averring that, agreeably to Article XVII, Section 9, of the Constitution of Pennsylvania, the complainant borough had given its consent to various street railway companies to construct street passenger railways in the borough limits, and in certain duly enacted and accepted ordinances, had prescribed, as a condition to its consent, certain maximum fares to be charged by the said railway companies; that the Pittsburgh Railways Company, as lessee, having itself for years complied with these ordinances, now proposed to enjoy these consents, and at the same time violate the terms thereof, by an increase of fares pursuant to tariffs on file with the commission, in violation of the Constitution of Pennsylvania and also of Article I, Section 10, and Article XIV of the Constitution of the United States. The complainant further petitioned that the commission make an order refusing its sanction to the proposed action of the applicant.

The commission made the following order:

We find that the Public Service Commission under its organic act is charged with the duty and responsibility of determining whether the rates under attack are unjust, unreasonable, or unjustly discriminatory or unduly or unreasonably preferential, and that there are no constitutional or statutory inhibitions to our so doing, therefore the complaint will be set down for further hearing in accordance with these findings and conclusions.

*Error assigned* was the order of the commission.

*W. W. Acheson, Jr.,* of *Sterrett & Acheson,* and with him *Brown, Stewart & Bostwick,* for appellant.—Under Section 9 of Article XVII of the Constitution of Penn-

sylvania, the consent of the municipality to the entrance on its streets by a railway company was essential, and the conditions imposed in such consent are binding: McKeesport v. Citizens Passenger Ry. Co., 2 Pa. Superior Ct. 249; Plymouth Township v. Chestnut Hill & Norristown Ry., 168 Pa. 181; Carlisle & Mechanicsburg Street Ry. Company's Appeal, 245 Pa. 561; Allegheny v. Millvale, Etna & Sharpsburg Street Ry. Co., 159 Pa. 411; Ashworth v. Pittsburgh Rys. Co., 231 Pa. 539; West Chester Borough v. Cable Co., 227 Pa. 384; Minersville Borough v. Schuylkill Electric Ry. Company, 205 Pa. 394; McKeesport v. Ry. Co., 252 Pa. 142.

The Public Service Acts confer no jurisdiction on the commission to interfere with the terms of these consents, but, on the contrary, recognize their inviolability: Allied Associations of Philadelphia v. Philadelphia Rapid Transit Company, P. U. R., 1917E, 945; Re United Rys. Co., P. U. R., 1918D, 392; Re United Rys. Co., P. U. R., 1918B, 834; N. Y. & North Shore Traction Co. Case, P. U. R., 1918A, 893.

To construe the Public Service Company Acts as nullifying the conditional consents of the municipalities is contrary to Section 10, Article I, and Article XIV of the Constitution of the United States: Traction Company v. Reynolds, 244 U. S. 547; Detroit United Ry. v. Michigan, 242 U. S. 238; Point Bridge Company v. Pittsburgh Rys. Co., 240 Pa. 105.

*Reed, Smith, Shaw & Beal, A. W. Robertson* and *John C. Bane,* for Pittsburgh Railways Company and the Receivers of Pittsburgh Railways Company, appellees.— The contracts between the public service corporations and the municipality must be presumed to have been entered into with the knowledge that they could not withdraw the subject-matter thereof from the police power of the Commonwealth: Hudson County Water Co. v. McCarter, 209 U. S. 349; Chicago, Burlington & Quincy R. R. Co. v. Nebraska, 179 U. S. 57; Louisville & Nash-

ville R. R. Co. v. Mottley, 219 U. S. 467; City of Benwood v. Public Service Commission, 75 W. Va. 127; Manitowac v. Manitowac & Northern Traction Co., 145 Wisconsin 13.

The regulation and control of rates of fare to be charged by a public service company is unquestionably within the police power of the State and the Public Service Company Law is a valid and constitutional exercise of it: Relief Electric Light & Power Co.'s Petition, 63 Pa. Superior Ct. 1; Munn v. Illinois, 94 U. S. 113; Chicago, Burlington & Quincy R. R. Co. v. Iowa, 94 U. S. 155; Portland Ry., Light and Power Co. v. Railroad Commission of Oregon, 229 U. S. 397; State of Washington ex rel. Webster v. Superior Court, 67 Washington 37; Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467.

The Public Service Commission had jurisdiction to determine whether the rates complained of by the appellant were unjust, unreasonable and discriminatory: Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114; St. Clair Borough v. Tamaqua and Pottsville Electric Ry. Co., 259 Pa. 462; Leiper v. Baltimore & Phila. R. R. Co., 262 Pa. 328; Turtle Creek Borough v. Pennsylvania Water Co., 243 Pa. 415.

*H. B. Gill,* and with him *W. B. Linn,* for Scranton Ry. Co.

*Berne H. Evans,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY TREXLER, J., July 17, 1919:

The Pittsburgh Railways Company has filed with the Public Service Commission a schedule increasing its passenger fares. The increase applies to the service in Wilkinsburg. The borough protests against it, alleging that the proposed rates are unjust and unreasonable

and that they are contrary to the terms of the ordinance of the borough granting the street railway company the right to construct its tracks on the streets of the borough, in that said ordinance prescribes certain maximum rates to be charged, and that the proposed rates are higher than the rates so fixed.

The question before us is, has the Public Service Commission authority to pass upon the reasonableness of street railway rates fixed by ordinance as a condition to the consent given by the municipality for the laying of the tracks of the company on the streets? Can such fares be increased by the commission?

"No street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities," Article XVII, Section 9, Constitution of Penna. The municipality may confer its consent with a condition that the company shall carry passengers at a designated rate of fare. Neither the legislature nor the courts can trespass upon the discretion given absolutely by the Constitution to the local bodies, in determining the conditions upon which they will consent to the construction of a street passenger railway upon the local highways. Allegheny v. Millville Ry. Co., 159 Pa. 411, and a long line of cases, the latest cited by counsel being McKeesport v. McKeesport & R. P. Ry. Co., 252 Pa. 142. These cases would apparently settle the matter before us, were it not for the fact that the question is now presented in a new light. We are to construe the above section in connection with Section 3, Article XVI, which reads: "The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State."

When the legislature passed the Public Service Company Law, July 26, 1913, P. L. 1374, and gave to the Public Service Commission "the power to inquire into and regulate the service, rates, fares, tolls or charges of any

and all public service companies," (Sec. 1, Art. V) were street railway companies whose rates were fixed by what are termed "consent" ordinances excluded as to such rates from the operation of the act, or did the police powers reserved in the section above quoted, still leave them as a proper subject for legislation?

We need not at any length go into the question of what is comprehended under the term "police power." Such power is not confined to the protection of public health, morals and safety but includes the general welfare, apart from the above subjects. It includes the regulation of rates for public service corporations: Relief Electric L., H. & P. Co.'s Petition, 63 Pa. Superior Ct. 1; Leiper v. Balt. & P. R. R. Co., 262 Pa. 328. "Such power inherent in all forms of government, Com. v. Vrooman, 164 Pa. 306, can only be taken away from the legislature by constitutional enactment clearly and definitely expressing that purpose," KEPHART, J., Relief Co.'s Petition, supra. The appellant argues that the above section merely puts a restriction on the usurpation of powers by corporations and is not a general reservation of the police power. The language of the section is quite broad. The existence of the police power is assumed, its "exercise" shall not be abridged or construed so as to permit corporations to conduct their business so as to infringe the general well-being of the State. The "general well-being" is equivalent to "general welfare" and embraces a wide circle of subjects, almost without limit. Certainly, the well-being of the State is promoted by the regulations of fares so that the same may be fixed at a rate to invite the investment of capital and the supply of means for efficient service, and at the same time furnish service to the traveling public commensurate to the charges made. It seems that the framers of the Constitution had in mind that whatever other provisions there might be in the instrument, the operations of corporations should not be allowed to impair the sovereignty of the State, so as to deprive the legislature of remedying such evils as might arise, and

that when such a situation presented itself as we are now considering, the courts might be entirely untrammelled in preserving the rights of the State, and furthering its welfare. In coming to this conclusion, we do not lose sight of the Millville case, supra, and those following, which hold that the right of the municipality to impose conditions to the entry is absolute. The question, however, in all these cases was the right to impose such conditions. There was no attempt by the legislature to regulate the entry of street car companies into municipalities. The quarrel was between the borough or city and the railway company. The State was not a party. The legislature never could, under the present Constitution, grant to any street car company the right to enter streets of any municipalities of the State without the consent of the local authorities, and the right to impose conditions also remains, but we do not believe that the imposition of conditions removes the subjects contained therein from the domain of legislative action, and that a general law designed to affect all public service corporations of the State, has no application to matters covered by "consent" ordinances. If there be doubt on the subject, that doubt should be resolved in favor of the Commonwealth. Street railway companies are no longer merely local in their operation but have become competitors of the railways, both in the carrying of passengers and light freight, and their lines extend between distant points. It is, therefore, very desirable that they should be subject to State regulation and that a uniform system of supervision should prevail, and especially is this so as to rates of fare.

We have made no reference to the many cases from other jurisdictions for we think the question depends entirely on the construction of the above section of the Constitution, and is within narrow limits and requires no extended elaboration. We have also avoided the discussion of the cases which concern the question of the impairment of contract in changing a rate fixed in "consent" ordinances. The answer to the question is found

in Leiper v. Balt. & P. R. R. Co., 262 Pa. 328 (332). "It would be impossible for the commission to enforce an equality of reasonable rates, except upon the basis that it is not bound by contracts previously entered into between a public service company and either a municipality, another corporation, or a private individual. The basis upon which this conclusion must rest is that under the Constitution of Pennsylvania, Article XVI, Section 3, it is provided: 'The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State.' Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the 'general well-being of the State,' the rights of the individual must give way to the general welfare. It therefore follows that when, as in this case, the parties enter into a contract with a public service corporation relating to rates, they are presumed to have done so with the knowledge that the right of the State to exercise this police power in the future is expressly reserved, and that where the common weal and the interests of the public demand that the provision of the contract thus entered into shall be modified, it can be done without any violation of the provision of the Constitution of the United States with reference to the impairment of the obligation of contracts." The above language is largely applicable to the question we have above discussed.

The assignments of error are overruled. The order of the Public Service Commission is approved. Appellant for costs.

PORTER and HENDERSON, JJ., dissent.