# Schuylkill County's Appeal.

*Opening of Streets under General Road Law, how affected by Act regulating Boroughs.—Duties of Jury to assess Damages.—Report of Jury, Evidence of what.—Change of Line, how proven.*

1. Where a street was ordered to be laid out and opened in the borough of Pottsville, by proceedings in the Quarter Sessions in 1853–4, under the General Road Law of 1836, and partly opened, neither the Act of 22d April 1856—which expressly saves proceedings begun before its passage—nor the Act of April 22d 1856, Supplemental to Act regulating Boroughs—which is prospective as to laying out and opening streets—have any operation, though the street was not completely opened until 1859.

2. The duty of viewers appointed under the General Road Law is to assess the damages done in opening the road complained of; anything else in their report is *coram non judice*, neither conclusive in law nor fact, nor any evidence whatever.

3. Where the report of viewers recited that certain parties present at the view *alleged* and *admitted* that the road was changed to suit the wishes of the

borough authorities, their report is not, in itself, evidence that the road was not opened on the precise ground on which it was located. That evidence was to be found in the original survey or draft.

4. When the viewers reported only the admission that the street had not been opened according to the draft, "but had been changed to run more at right angles through the property of the petitioner," and it did not appear how much the divergence was, whether material or so slight as to come within the discretion of the proper authorities, there was no error in the confirmation of the report by the court below.

CERTIORARI to the Quarter Sessions of *Schuylkill county*.

This was an appeal by the county of Schuylkill from the decree of the court below, confirming the report of viewers to assess damages.

In November 1853, on the petition of citizens of Pottsville, praying for the vacating of that part of Callowhill street which extended from Coal street to Line alley, and the laying out of another street, to be called Callowhill, from said Coal street to George street, the court appointed viewers, whose report, in accordance with the prayer of the petitioners, was made March 21st, and confirmed absolutely June 19th 1854.

The street was partly opened in 1854. In 1859, Mrs. Margaret A. Dornan, whose property was affected by it, presented a petition, praying for the appointment of viewers to assess damages. Six viewers were accordingly appointed, whose report, assessing her damages at $1700, was filed September 11th 1860, and confirmed *nisi*. In this report, after stating that they had been duly sworn or affirmed according to law, they returned that they had "viewed the premises and road therein mentioned in the presence of Edward O'Connor and Evan J. Thomas, Esquires, two of the commissioners of said county, and the representatives of the said Margaret A. Dornan, and having heard their proofs and allegations, it was alleged by the commissioners (and admitted by the parties present) that the road had not been opened according to the draft laid out by the viewers of said street or road, but changed more at right angles through the property, in accordance with the views of the representative of the owner, and a committee of the Borough Council of Pottsville, as was admitted. And having taken into consideration the advantages and disadvantages to the said petitioner sustained, in consequence of opening said street or road, do value and adjudge the loss thereby to the within named Margaret A. Dornan, as at present located, at seventeen hundred dollars. And had the said street or road been laid out according to the draft of the viewers, more triangularly through the premises, we should have estimated the loss or damage at twenty-two hundred dollars."

To this report, the following exceptions were filed for the county of Schuylkill:—

1. The fact appears on the face of the report of the viewers,

that the street as laid out, is not the street ordered to be laid out by the court, but one laid out by the permission of the petitioner.

2. The Court of Quarter Sessions of Schuylkill county has no jurisdiction over the road or street laid out, but the jurisdiction is in the borough of Pottsville.

3. The county is not liable for damages for streets laid out in the borough of Pottsville, on the 24th of October 1860.

The Court of Quarter Sessions (HEGINS, J.) overruled the exceptions, and confirmed the report, whereupon the case was removed into this court by exceptants, who assigned the action of the Sessions in the premises for error.

*F. W. & J. Hughes*, for the county of Schuylkill, argued, 1. That the viewers had the right to alter the road, "in accordance with the views of a representative of the owner and a committee of the Borough Council of Pottsville," as was done in this case; citing the Road Law of 1836 and 1851, as construed by the Special Act of 1852, P. L. 622; Holden *v.* Cole, 1 Barr 306; Furniss *v.* Furniss, 5 Casey 15.

2. They argued that the petitioner's claim for damages was either wholly defeated by reason of the fact that the road, as laid out by the road viewers, was changed in accordance with. the "views of her representatives," or restricted to the value of land taken from her by the report of the viewers. In either case the report of the jury who assessed these damages should. have been set aside, as they are a compensation for land taken by the public, by virtue of the law and not by consent of the owners.'

3. The Quarter Sessions had no jurisdiction over this road or street. This is vested in the borough of Pottsville. Though laid out in 1854, it was not opened until 1859, when it was done under the direction of the street committee of the town council of Pottsville.

The general Act of April 22d 1856, being a supplement to the Act of April 3d 1851, regulating boroughs, requires damages in such cases to be assessed "on petition of borough and council, by some disinterested freeholders of the borough," &c., while the proceedings in this case were conducted in the old way, by petition of the party injured, and the appointment of six viewers, &c. The special act passed April 22d 1856, P. L. 509, relative to streets, &c., in Pottsville, expressly excepts out of its operations, roads, streets, &c., heretofore ordered to be opened.

If this construction be correct, the county is not liable for these damages, but the borough of Pottsville or the property owners benefited by the opening of the street, are alone responsible.

*Myer Strouse*, for appellee, in support of the position that

viewers may exercise a certain discretion in opening roads, cited Bryson's Road, 2 Penna. R. 207; In re State Street, 8 Barr 485; Furniss *v.* Furniss, 5 Casey 15.

As to the jurisdiction of the Quarter Sessions, and the liability of the county for damages, he argued that, as this proceeding was commenced in 1853, under the General Law of 1836, when there was no law in existence empowering the borough of Pottsville to lay out or open streets or roads, it was not affected by legislation subsequent to the commencement and near the completion of the road. The supplement above mentioned does not affect the borough or these parties, and the Special Act of same date for Pottsville does not extend to roads, &c., "heretofore ordered to be opened." The liability of the county for these damages, attached at and from the time when the road was commenced by order of the Quarter Sessions, and continued until the completion of the road. The presence of the street committee was no more than the attendance of the township supervisors.

The opinion of the court was delivered, March 11th 1861, by

THOMPSON, J.—It seems to me to be in order to consider the last exception first: and that involves the question of the liability of the county to pay the damage done to the owner of property by reason of laying out the road or highway in question, in the borough of Pottsville.

The road or street was ordered to be laid out and opened by proceedings in the Quarter Sessions of the county, commenced in 1853, and confirmed absolutely at June Sessions 1854, under the General Road Law of 1836. In was partly opened in that year, but not completely so until in 1859. At June Sessions 1860, Margaret A. Dornan applied to the court for the appointment of viewers to assess the damages alleged to have been done to her property, by reason of opening the road or street through it. The report of the viewers appointed by the court on that petition being confirmed, is now here on *certiorari*, and the exceptions to this proceeding are now to be considered.

Neither of the Acts of the 22d of April 1856, referred to by the plaintiffs in error, do we think have any operation in this case. The first of them, relating to "streets, lanes, and alleys in the borough of Pottsville," expressly saves all proceedings begun before its passage. The second, which is a Supplement to the Act regulating Boroughs, is expressly prospective in its provisions in regard to proceedings in laying out and opening streets. These acts, therefore, do not affect the petitioner's right to resort to the county for the damage done to the property by the opening of the street in question, if any were sustained.

The duty of the viewers is to be ascertained by reference to

the Act of 1836. By the 6th section of that act, they are " to view the premises and assess the damages, if any, which such petitioner may have sustained," through whose land a public road shall have been opened. And by the 7th section, they are to report to the next Court of Quarter Sessions, when, if their report be confirmed, the amount of damages awarded shall be paid out of the county treasury.

The duty of the viewers is to deal with the question of damages. The question of location is not within their jurisdiction. They are to assess the damages done in opening the road complained of. Anything else in their report is *coram non judice*, and need not be regarded; and is for this reason neither conclusive in law nor fact, or any evidence whatever: 2 Saunders on Pl. & Ev. 260.

This, I think, is a sufficient answer to the position taken, that the road was not opened on the precise ground on which it was located. We have no evidence except the report as to that, and in that it is recited that certain parties present, two of the county commissioners and two persons representing the petitioner, alleged and admitted that the road was changed *to run more at right angles*, through the petitioner's property, than when it was located, to suit the wishes of the borough authorities. Now, as the viewers were not appointed to find any fact of this kind, their report on the point is no evidence of the fact. There being no other evidence in the case to cover the point, it is not to be considered at all.

The viewers could only look at the road as opened, as was said of supervisors in McMurtrie *v.* Stewart, 9 Harris 322. There a supervisor attempted to open a road on different ground from that on which it had been originally opened, without any new order. He was sued for trespass and held liable, although the road was not opened originally on the right ground, and although he proposed to open it where it had been located. So here, the road being opened, it would remain until changed under proceedings for that purpose in court.

But even if we should pass the point suggested, the report does not allege that the road really was not opened where located, but only that four persons named admitted that it was not so opened. This was no evidence of the fact. That was only to be found in the survey or draft of the road.

But if all this were out of the case, the viewers only report that the admission was that the street had not been opened according to the draft, "but had been changed more at right angles through the property" of the petitioner. How much the divergence in its length, is not said. Whether the alteration was material, or so slight as to be disregarded on the principle of *de minimis*, and hence within the discretion of the supervisors

or the borough authorities in opening, does not appear. As to this, see Furniss *v.* Furniss, 5 Casey 15.

These last views are not, in my opinion, essential, but are expressed to show that in the fullest extent of the arguments drawn from the reports by the appellants, there is nothing to raise a doubt of the accuracy of the court below in confirming the report.

Decree affirmed at costs of appellant.