# Lancaster County, Appellant, *v.* The Public Service Commission.

*Railroad crossings—Alteration—Expense—Liability—Apportionment of costs—Counties—Public Service Company Law.*

A county is a "municipal corporation concerned," within the meaning of section 12, article V, of the Public Service Company Law. The Public Service Commission in such case has authority to require the county to pay a portion of the cost of the alteration and relocation of the crossing of a state highway by a railroad.

The provision of the Public Service Company Law which provides that where the order of the commission, shall as a part of the regulation of the construction, relocation, alteration or abolition of any crossing, require as incidental thereto, a relocation, change in, or removal of, adjacent structures or other facilities of other public service companies, that said companies shall at their own expense remove the same, has no application to the crossing or structure complained against. It applies only to those facilities, the removal of which is incidental, and not essential to the alteration or relocation of the crossing.

The duty of deciding the apportionment of costs in the alteration of a railroad crossing is in the first instance in the Public Service Commission. Where no evidence is furnished that the commission has abused its discretion, the appellate courts will not disturb its order.


Argued October 8, 1921. Appeal, No. 142, Oct. T., 1921, by County of Lancaster, from order of the Public Service Commission of the Commonwealth of Pennsylvania in the matter of the complaint of Eli D. Wenger et al. v. The Pennsylvania Railroad Company, Complaint Docket, No. C2674. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Appeal from the order of the Public Service Commission ordering the alteration and relocation of a bridge carrying the tracks of the Pennsylvania Railroad Company over State Highway Route, No. 137, in Caernarvon

Township, Lancaster County, and apportioning the costs between the railroad company and the municipal corporations concerned.

The commission, on an opinion by Rilling, Commissioner, entered the following order:

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof:

Now, to wit, April 5, 1921, it is ordered: That the existing overhead bridge carrying the single track of the New Holland Branch of the Pennsylvania Railroad Company, respondent, over State Highway Route No. 137, in Caernarvon Township, Lancaster County, be reconstructed in accordance with the plans submitted by the bureau of engineering of the commission and filed of record, which said plans are hereby approved.

It is further ordered: That the land within the lines of the relocated highway including so much land as is necessary to construct the new abutment thereon, as provided in said plan herein approved, be and the same is hereby taken and appropriated for that purpose.

It is further ordered: That, the State Highway Department having consented to do all the work necessary to relocate the highway and improve the same including the necessary drainage, the Pennsylvania Railroad Company, respondent, shall do all the balance of the work consisting of the construction of the abutment and overhead bridge and necessary track work estimated to cost the sum of $19,761.50.

It is further ordered: That all the work of reconstructing said overhead bridge in accordance with the

plans herein approved be fully completed on or before September 1, 1921.

It is further ordered: That the Pennsylvania Railroad Company, respondent, perpetually maintain the overhead structure and abutments.

It is further ordered: That the sum of $2,500 be and the same is hereby appropriated by the Public Service Commission out of the funds specifically appropriated to it for the elimination of grade crossings by the Act of July 18, 1919, P. L. 1048; said sum to be paid to the Pennsylvania Railroad Company, respondent, upon the completion of the work and the approval thereof by the commission.

7. [It is further ordered: That the County of Lancaster be and the same is hereby assessed the sum of $4,000 to be paid to the Pennsylvania Railroad Company, respondent, when certified to by the commission; said sum to apply on the work which is hereby required to be done by said respondent.]

It is further ordered: That the Township of Caernarvon be and the same is hereby assessed the sum of $500 to be paid to the Pennsylvania Railroad Company, respondent, when certified to by the commission; said sum to apply on the work which is hereby required to be done by said respondent.

*Error assigned,* among others, was the order of the commission.

*Frank S. Groff,* and with him *J. R. Kinzer,* for appellant.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Asst. Counsel, for the Public Service Commission.

OPINION BY LINN, J., November 21, 1921:

The question is whether Lancaster County is liable to assessment by the Public Service Commission in a pro-

ceeding for the reconstruction of a crossing of state high-way route No. 137 by an overhead railroad pursuant to section 12, article 5, of the Public Service Company Law as amended. On March 7, 1919, several hundred residents of Lancaster County filed a complaint with the commission complaining that the crossing in question located in Caernarvon Township in that county was dangerous to travel and required the consideration of the commission. On April 23, 1919, the Pennsylvania Railroad Company, operating the railroad across the highway, filed an answer. On May 7, 1919, a hearing was held by the commission, at which counsel for the complainants and for respondent, and the chief engineer of the state highway department were present and participated in a general discussion of the situation. On October 14, 1920, testimony was taken on the merits. Again on January 19, 1921, the commission heard evidence and the complainants, the County of Lancaster, the state highway department and respondent railroad company were represented and participated. A subsequent hearing was held February 2, 1921, at which counsel for complainants produced an agreement executed by the supervisors of Caernarvon Township, by which the township volunteered to contribute $500 toward the cost of the improvement; he also produced a release of the abutting landowner "releasing the County of Lancaster from all property and other damages that may be sustained in straightening this road." At this meeting the township supervisors approved the plan ultimately adopted, but the representatives of the county stated that they could "neither approve nor disapprove of the plan," contending that "the County of Lancaster should not be called upon to contribute at all for the expense of changing the bridge; inasmuch as it is purely a railroad bridge for its own use entirely and not a bridge used by the public. The road has been there before the bridge was ever erected." Testimony was again taken at a meeting on March 4, 1921, at which counsel for the county appeared, called

and examined witnesses as to the condition of the highway before the railroad was constructed, and as to the character of the crossing, the use to which it was put, as well as about the plans proposed for its reconstruction. It appeared that the highway was originally constructed by a turnpike company incorporated under the Act of March 24, 1803, P. L. 441. About 1876 the railroad, now operated by respondent company, was constructed across the highway overhead, but not at right angles, with the result that the line of the highway was changed by requiring a slight curve in its course on each side of the line of the railway. The abutments supporting the overhead railroad were constructed about 19 feet apart and at such angles with the course of the highway as to constitute an obstacle to a clear view for the traveler up or down the highway. It was freed from tolls in 1871 and thereafter until 1911 was maintained by the township. By the State Highway Act of 1911, the road became a state highway, part of route No. 137, and has since been maintained by the state highway department. The commission found that the improvement "proposes the straightening of the highway and lengthening the bridge so as to have a clear span of about 48 feet, reconstructing the east abutment so as to have a horizontal clearance at right angles of 24 feet between the abutments of the bridge and vertical clearance of 14 feet. The grade of the highway will be reduced to about eight per cent. The estimated cost of the entire improvement is $24,271." The commission concluded that the crossing required reconstruction and so ordered. It relocated the highway to the extent required by the proposed plans and appropriated the land necessary for that purpose. It also provided in its order for paying the cost, specifying that $500 should be paid by Caernarvon Township, $4,510 by the state highway department, $2,500 by the commission, $4,000 by Lancaster County and the balance by the Pennsylvania Railroad Company, upon whom the future

maintenance of the overhead structure and abutments was imposed.

Lancaster County appealed. It expresses no dissatisfaction with the proposed improvement, but complains that the order is not reasonable and in conformity with law because, so it says, the highway was properly constructed and safe for travel before the railway was constructed overhead, and as the dangerous conditions on the highway resulted from the railroad construction, the railroad company should now be required to pay the entire cost of the improvement.

The pertinent power of the commission is conferred by section 12, article V, as amended by the Act of July 17, 1917, P. L. 1025: "The commission shall also have exclusive power, upon its own motion or upon complaint, and after hearing as hereinafter provided, of which all the parties in interest, including the owners of adjacent property, shall have due notice, to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered, or to be abolished, according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission.

"In determining the plans and specifications for any crossing herein mentioned, the commission may lay out, establish, and open such new public highways as, in its opinion, may be necessary to connect said crossing with any existing highways or to make said crossing more available to public use; and may abandon or vacate such highways or portions of highways, as, in the opinion of the commission, may be rendered unnecessary for public use by the construction, relocation, or abandonment of any of said crossings.

"The compensation for damages which the owners of adjacent property, taken, injured or destroyed, may sustain in the construction, relocation, alteration, or abolition of any such crossing specified in this section, for

which compensation the said owners are hereby invested with warrant of authority, upon appeal from the determination of the commission to sue the Commonwealth, shall, after due notice and hearing, be ascertained and determined by the commission; and such compensation, as well as the expense of the said construction, relocation, alteration, or abolition of any such crossing, shall be borne and paid, as hereinafter provided by the public service company or companies or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid." Article 1, section 1, of the act (1913, P. L. 1374) provides that "The term 'municipal corporation' as used in this act, shall include cities, boroughs, towns, townships, or counties......"

To support its contention the county contends that when the bridge was constructed over the highway about 1876, section 13 of the General Railroad Act of February 19, 1849, P. L. 79, was applicable. It provides: "That if any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, on the most favorable location, and in as perfect a manner as the original road: Provided, that the damages incurred in changing the location of any road authorized by this section, shall be ascertained and paid by such company, in the same manner as is provided for in regard to the location and construction of their own road." Appellant says that as respondent company succeeded to the rights of the company that originally built the railroad bridge, it is subject to the liability imposed by section 13 of the Act of 1849 and to indictment for its violation upon the authority of decisions like Commonwealth v. Railroad Co., 35 Pa. Superior Ct. 416. It also contends that "The commission erred in not finding that the proceeding be-

fore it was an action by the Commonwealth against the railroad company for failure to perform its statutory duty in relocating the part of the highway occupied by it at the point in question in as perfect and safe a manner as the original highway, tantamount to an action ex rel. or to an indictment for a public nuisance." While the commission states that it considered the fact that the public highway was constructed first, the evidence is not sufficient to determine whether or not there was on the part of the railroad company, as claimed, a "failure to perform its statutory duty in relocating the part of the highway occupied by it at the point in question in as perfect and safe a manner as the original highway" or whether there was any other violation of law. It is also clear the commission does not possess the comprehensive powers suggested in the quotation from appellant's argument. Though applied to a different phase of the scope of the power of the commission, what was said by this court on another occasion is now pertinent: "The Public Service Commission is an administrative body, not a judicial one, its orders, made from the standpoint of the public accommodation, convenience or safety solely, cannot be made the foundation for the judicial determination of what franchises do or do not belong to any corporation interested. Such matters must be determined as heretofore by a legal proceeding instituted in the courts for that purpose. An appeal from an order of the commission, either granting or refusing a certificate of public convenience, cannot be made a substitute for a writ of quo warranto or other legal proceeding in which it may be judicially determined what franchises, claimed by any chartered company, are active and in full force, it takes away from no company any right or power then legally existing": Passyunk Avenue, etc., v. Pub. Ser. Com., 73 Pa. Superior Ct. 242, at 251.

We cannot agree with appellant's contention that changing the abutments of the bridge is incidental within the provisions of the Public Service Company Law

(1913, P. L. 1374, at 1410) that "where the order of the commission shall, as part of the regulation of the construction, relocation, alteration or abolition of any crossing aforesaid, require, as incidental thereto, a relocation, changes in or the removal of any adjacent structures, equipment, or other facilities of any telegraph, telephone, gas, electric light, water power, water pipe-line, or other public service company, said company shall, at its own expense, relocate, change or remove such structures......" That provision has no application to the work here ordered; the change in the abutments is not incidental; it is essential.

The only remaining contention requiring notice is that the county is not a municipal corporation "concerned" or "interested" in the improvement within the meaning of the statute. The learned counsel for the county in their printed brief say, "If there ever was a case in which the entire expense of relocating the overhead bridge and its abutments and track work should be 'borne and paid' by the public service corporation, it is the case at bar." But the duty of deciding that in the first instance has been conferred upon the commission; it has made the apportionment; and no reason has been furnished to us for disturbing it; we think the order is reasonable and in conformity with law. The reconstruction of the crossing results in substantial local improvement; it was formally requested by hundreds of residents of the county; the highway is straightened by the removal of the two curves; the grade of the hill is reduced to eight per cent; the overhead clearance is increased; a clear span of 48 feet results; the obstruction to view theretofore existing is removed.

In Paradise Township v. Pub. Ser. Com., 75 Pa. Superior Ct. 208, we held that a township may be concerned or interested within the meaning of the statute and therefore liable to assessment, and no reason has been suggested to us for holding otherwise with regard

to the county now appealing; what is said on pages 212 and 213 of the report of that case is applicable here.

We see no basis for the criticism of the order that the county is required to pay to the railroad company on the certificate of the commission, etc.    By its order the commission retains complete control of the work and the payment therefor as contemplated by the 12th section of article 5.    See also Schuylkill County v. Public Service Commission, 77 Pa. Superior Ct. 504.

The order is affirmed, the costs of the appeal to be paid by appellant.

*Railroad crossings—Alteration—Expense—Liability—Apportionment of costs—County—Boroughs—Public Service Company Law.*