# Schuylkill County, Appellant, *v.* The Public Service Commission.

*Railroad crossings—Alteration—Expense—Liability—Apportionment of costs—County—Boroughs—Public Service Company Law.*

A county, in which is located a bridge carrying the tracks of a railroad company over a state highway, which has been declared dangerous by the Public Service Commission, and ordered to be changed, is a "municipal corporation concerned," within the meaning of the Public Service Company Law.  The Public Service Commission in such case has authority to require the county to pay a portion of the cost of the alteration and relocation of the crossing.

The fact that the crossing in question is located in a borough within the county, does not affect the liability of the county to pay a portion of the costs, upon the order of the Public Service Commission.

The Public Service Company Law authorizes the commission to require payment of the cost of the reconstruction of crossings by the public service company or companies or municipal corporations concerned, or by the Commonwealth in such proportions as the commission may after hearing, determine.

The inhabitants of the county have a concern and interest that is at once direct and immediate in the use of the reconstructed crossing, freed from the dangers of which complaint was made to the Public Service Commission.

Argued October 8, 1921.   Appeal, No. 183, Oct. T., 1921, by County of Schuylkill, from order of the Public

Service Commission of the Commonwealth of Pennsylvania in the matter of complaint of State Highway Department of the Commonwealth of Pennsylvania v. Philadelphia & Reading Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Appeal from order of the Public Service Commission ordering the alteration and reconstruction of overhead crossing carrying the tracks of the Philadelphia & Reading Railway Company over State Highway Route No. 162, in the Borough of Port Carbon in Schuylkill County, and apportioning the costs between the railroad company and the municipal corporations concerned.

The commission filed the following order:

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made part hereof;

Now, to wit, May 17, 1921, it is ordered: That the plan submitted by the Philadelphia & Reading Railway Company, respondent, and filed of record, providing for the reconstruction of the overhead crossing involved in this complaint by the relocation of the state highway and the carrying of the same over the tracks of the respondent railroad company, be and the same is hereby approved.

It is further ordered: That all land lying within the lines of said relocated highway, as shown in said plan, be and the same is hereby taken and appropriated for the purposes intended.

It is further ordered: That so much of the present highway as lies within the limits of the right-of-way of

said respondent, at the point of said overhead crossing herein involved, be and is hereby vacated.

It is further ordered: That the Philadelphia & Reading Railway Company, file with the State Highway Department, within fifteen days from the date of the service of this order, a detailed plan providing for the carrying of the highway over its tracks, and upon the approval thereof by the State Highway Department said respondent shall construct, at its own cost and expense, the highway over its tracks in accordance therewith and shall in addition thereto, at its own cost and expense, fill the present highway under the two existing overhead bridges.

It is further ordered: That, the State Highway Department having consented to do all of the work necessary to complete the two approaches to the overhead bridge, including the road pavement thereon and contribute toward the cost thereof the sum of $15,000, in addition to the cost of the road pavement thereon, the County of Schuylkill be and is hereby assessed and shall pay to the State Highway Department, when and as certified by the Public Service Commission, the sum of $5,000 to apply on the cost of building the two approaches to said overhead bridge.

It is further ordered: That the Philadelphia & Reading Railway Company, respondent, be and it is hereby assessed and shall pay to the State Highway Department, when and as certified by the Public Service Commission, the entire cost of building the two approaches to said overhead structure, not including the road pavement thereon, less the sum of $20,000 to be paid by the State Highway Department and the County of Schuylkill, as above ordered.

It is further ordered: That all damages arising on account of the taking of any land for the relocated highway, or which may be lawfully claimed by any adjacent property owner on account of the relocation and reconstruction of said crossing in accordance with the plan

herein approved, shall be borne and paid for as follows: Seventy-five per cent thereof by the County of Schuylkill and twenty-five per cent by the Borough of Port Carbon; said damages to be paid when and as certified by the Public Service Commission.

It is further ordered: That the Silver Creek Water Company shall, at its own cost and expense, relocate so much of its water main as is necessary in order to make the improvement contemplated by this order.

It is further ordered: That any relocation of poles or wires rendered necessary by the reconstruction of said overhead crossing in accordance with the plan herein approved, shall be made by the public service company or companies owning the same, at their own cost and expense.

It is further ordered: That all work of relocating the state highway and reconstructing the overhead crossing, in accordance with the plan herein approved, shall be fully completed on or before October 1, 1921.

*Error assigned,* among others, was the order of the commission.

*Arthur L. Shay* and *E. D. Smith,* and with them, *C. A. Snyder,* County Solicitor, for appellant.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for Public Service Commission.

OPINION BY LINN, J., November 21, 1921:

This appeal raises the same question considered in the appeal of Lancaster County in an opinion filed today: whether a county is liable to assessment by the Public Service Commission for the relocation of a crossing of a state highway by a railroad; and we might dismiss it for the reasons there given, but as contentions were presented to us in the argument of this appeal not made in that, we shall briefly consider them.

In the Borough of Port Carbon, in Schuylkill County, state highway route No. 162 extends along the north bank of the Schuylkill River and but few feet therefrom. The highway is crossed by three tracks of the Philadelphia and Reading Railway Company also extending across the river. These crossings are above grade, two of the tracks crossing the highway with an overhead clearance of ten feet, the third track with an overhead clearance of nine feet. The horizontal clearance on the state highway afforded by these crossings does not exceed twenty feet. On June 26, 1920, the state highway department formally complained to the commission that the inadequate clearance, both vertical and horizontal, resulted in such danger to public travel as to require reconstruction of the crossings. On July 12, 1920, the railway company filed an answer denying the charge. On January 10, 1921, the commission ordered that Schuylkill County and Port Carbon Borough be made parties and receive process. The county filed an answer admitting the allegations of the state highway department but denying liability "as the crossing complained of is in the Borough of Port Carbon and the county is in no way responsible for the erection, construction or maintenance of said overhead bridge......" The borough answered, admitting that the overhead clearance was dangerous and averring that the horizontal clearance was adequate. The commission held hearings, heard evidence and arguments on behalf of all parties and on May 17, 1921, ordered the reconstruction of the crossings in accordance with a plan then adopted. The record shows that proximity to the river prevented lowering the bed of the highway for the purpose of increasing the overhead clearance and that the character of the railroad company's general track layout in the vicinity rendered it impracticable to raise the tracks to obtain the required clearance. There was evidence that the highway was flooded during periods of high water. The plan adopted provided for a reconstruction of the

crossings by taking the highway over the tracks. The commission found this could be most reasonably done by shifting the line of the highway to the north a distance of about 50 feet at the point of crossing. It appropriated the land necessary for the highway on the location to which it was thus shifted and vacated so much of the former highway as was provided for by the substitute, in all a stretch of about 1,100 feet, from where it diverged on the east to where it joined on the west. The commission estimated the cost of the improvement to be about $72,690.60. It ordered the railway company to construct and pay for the state highway over the tracks in accordance with the plan and to fill the vacated highway under the two existing crossings. It accepted the proposal of the state highway department to do the work necessary to complete the two approaches to the overhead crossing including the road pavement thereon, and to contribute $15,000 to the cost of the improvement. It ordered that Schuylkill County pay to the state highway department upon the certificate of the commission the sum of $5,000 to be applied on the cost of completing the approaches to the crossing. It also ordered that compensation for the land taken for the relocated highway, and damages payable to adjacent owners on account of the relocation and reconstruction should be paid by Schuylkill County and Port Carbon borough in the proportions of 75 per cent and 25 per cent respectively, as and when certified by the commission. The order contained other matters which need not now be mentioned. It is not contended that the order is in any respect unreasonable; the single complaint made by the learned counsel for Schuylkill County is that a county cannot be "concerned" or "interested" so as to be assessed by the commission in the relocation or reconstruction of a crossing under article V, section 12, of the act as amended unless the bridge by which the crossing is made is a county bridge authorized by appropriate action of the grand jury, the court of quarter sessions and the

county commissioners, for, it is said, unless these steps have been taken the commissioners are not empowered to expend the money of the county in the erection of the bridge, and cases like Commonwealth v. Bowman, 218 Pa. 330, are cited to support the argument. Various statutes authorizing counties to construct county bridges have also been called to our attention. The argument fails to distinguish between the restricted powers conferred upon counties and the comprehensive powers conferred upon the commission. The Public Service Company Law authorizes the commission to require payment of the reconstruction of crossings "by the public service company or companies or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid": (1913, P. L. 1374, as amended 1917, P. L. 1025). The state may of course authorize a county to build and pay for bridges in specified circumstances, and has done so, but that does not prevent the Commonwealth from also requiring the county to pay in whole or in part for the construction of bridges in other circumstances. The existing statutes to which our attention has been called, authorizing the building of county bridges, while of general application in the State, necessarily require local action such as has been referred to; but there is nothing in those statutes disabling the State from otherwise improving or causing to be improved its roads, whether township roads, county roads, state-aid roads or state highways, and requiring local contribution to the cost thereof without in any way interfering with the construction of county bridges by counties, and in order that adequate improvement may be made from time to time when necessary by the elimination of dangerous crossings throughout the State, the commission has been given "exclusive power......to order any crossing......at grade, or at the same or

different levels, to be relocated or altered, or to be abolished, according to plans and specifications to be approved, and upon just and reasonable terms and conditions to be prescribed by the commission": Article V, section 12. The statute provides for action, not by three sections of government in one or more of sixty-seven counties if and when action might be deemed wise locally, but for action by the State through its commission for the purpose specified, and to that end the commission has exclusive power. In the same section of the statute, the general assembly stated the purpose to be accomplished by this exercise of the police power as required "......to the end, intent and purpose that accidents may be prevented and the safety of the public promoted"; and so comprehensive is the general power of the commission over crossings stated to be that "......in no case shall the approval or consent of any court, board, or other commission or officer, or of any municipality, be necessary therefor." While of course a county which has paid for a bridge is "concerned" and "interested" in the bridge, as counsel for appellant contends, it may also be vitally "concerned" and "interested" in the local benefit resulting by the substitution of a safe for a dangerous highway, for which it has yet paid nothing. It is not denied that the reconstruction ordered by the commission in this case completely removes the danger and results in great improvement; indeed, no adverse criticism of any kind is made of the improvement itself; the only complaint is that the county should be required to pay anything. The inhabitants of the county have a concern and interest that is at once direct and immediate in the use of the reconstructed crossing freed from the dangers risked by every user of the highway complained of. There is a distinct local benefit.

Appellant also suggests that it should not contribute because section 10 of the State Highway Act of 1911, P. L. 468, at 516, requires that the Commonwealth pay the expenses of improving any state highway within a

borough. That contention would also restrict the scope of the Public Service Company Law as already indicated contrary to its terms; in considering the relations of the highway department and the commission we said in Erie R. R. Co. v. Pub. Ser. Com., 77 Pa. Superior Ct. 196: "It is quite clear that there was no legislative intent to confuse the powers of these two great departments nor to make one dependent on the other, save and save only where a highway was, or was to be crossed at grade by, or was to be carried over or under the tracks or facilities of a public service company. Within its own proper sphere each was the state itself. The Public Service Commission in section 12, of article V, of the Act of 1913, which was afterwards amended by the Act of July 17, 1917, P. L. 1025, was given the power, upon proper showing, to order any existing crossing to be relocated, altered or abolished, according to plans and specifications to be approved by it, and upon just and reasonable terms affecting public service companies or municipalities that would be benefited by its action." Counsel also calls attention to certain provisions in the borough code authorizing boroughs to contribute to the payment of bridges and overhead crossings, but no inference limiting the power of the commission in the respect now claimed can be drawn from those provisions for the reasons already stated.

In R. R. Co. v. Pub. Ser. Com., 71 Pa. Superior Ct. 15, though the appeal was by the railroad company and not by the county, we affirmed an order requiring the county to contribute to the cost of a bridge carrying a state highway over a stream and railroad tracks in a borough. The subject was directly considered in the appeal of Paradise Township v. Pub. Ser. Com., 75 Pa. Superior Ct. 208, and the position of the commission was affirmed; that case was followed in Salem Township v. Pub. Ser. Com., 76 Pa. Superior Ct. 374. See also Lancaster County v. Pub. Ser. Com., 77 Pa. Superior Ct. 495.

The order of the commission is affirmed, the costs of the appeal to be paid by appellant.