## Durante's Petition.

*Constitutional law — Road law — State highways — Damages imposed on counties—Acts of May 31, 1911, and April 6, 1921.*

1. The Act of April 6, 1921, P. L. 107, amending the 16th section of the Act of May 31, 1911, P. L. 468, is not unconstitutional, in that it imposes liability upon the county instead of the State for changes in location of a State highway by the State Highway Commissioner.

2. Nor is it unconstitutional because it makes no provision for the raising of funds by taxation or otherwise with which to pay the damages for such change in location.

3. The act is general in its scope, embraces and applies alike to any county in the Commonwealth, and imposes no distinctive duty or obligation which is not common to all of them.

4. The act does not impose a debt of the State upon the county.

5. The intent of the act was to transfer future liabilities for damages from the State to the county.

6. The county being liable under the act, has the right to levy and collect the money with which to pay the damages.

Rule to show cause on petition. Demurrer to petition. Q. S. Jefferson Co., Aug. Sess., 1921, No. 75.

*W. N. Conrad,* for petition.

*Raymond E. Brown,* County Solicitor, for demurrer.

CORBET, P. J., Jan. 29, 1923.—The petition of Domenic Durante sets forth that he owns a piece of land, with buildings thereon, located in Union Township; that the State Highway Commissioner changed the location of a portion of State Highway Route 64, known as the Lakes to Sea Highway, to a relocation on and across his said piece of land, and that, in consequence, he has suffered great damage and injury; wherefore he prays for the appointment of viewers to ascertain and assess such damages under the provisions of section 16 of the Act of May 31, 1911, P. L. 468, as amended by the Act of April 6, 1921, P. L. 107.

To the petition the County of Jefferson, by its solicitor, demurred, alleging, so far as we deem it necessary to quote, that "the Court of Quarter Sessions of Jefferson County is without jurisdiction in the premises, for the reason that the Act of April 6, 1921, P. L. 107, is unconstitutional and void, in so far as it imposes liability upon the county, in the 16th section thereof, for changes in location of the State highway by the State Highway Commissioner, for the following reasons:

"*(a)* The legislature exceeded its constitutional authority in creating an indebtedness from the county to a third person for an injury done or to be done by the State, to which the former was not a party and over which it had or has no control.

"*(b)* The said Act of 1921 makes no provision for the raising of funds by taxation or otherwise with which to pay damages caused by the State Highway Commissioner, and it would be unlawful for the commissioners of the county to pay such damages with funds raised by taxation for other purposes specified by law.

"*(c)* The legislature is without constitutional authority to require a county to assume a debt, or any part thereof, of the State."

The Act of April 6, 1921, P. L. 107, amends sections 8 and 16 of the Highway Act of May 31, 1911, P. L. 468. While there is also an amendment of said section 8 by the later Act of May 17, 1921, P. L. 837, we have to do here with said amended section 16, which reads as follows, to wit:

"Section 16. Before the State Highway Commissioner shall undertake the construction, reconstruction or improvement of any State highway on the

plan of the State highways, wherein a change of width or of existing lines and location is necessary, and damage is likely to result to abutting property, he shall notify the county commissioners of the proper county, in writing, of the contemplated change in such existing lines and location, whereupon the county commissioners, when possible, shall enter into an agreement with the owner or owners of said property as to amount of damage to be paid to the said owner or owners, which damage, if agreed upon, shall be paid by the county; or, in case an agreement satisfactory to the county commissioners and said owner or owners cannot be made, the State Highway Commissioner may proceed with the work of construction, reconstruction or improvement, and the owner or owners of said property damaged thereby may present their petition to the Court of Quarter Sessions for the appointment of viewers to ascertain and assess such damages. The proceedings upon said petition and by the viwers shall be governed by existing laws relating to the ascertainment and assessment of damages for opening public highways; and such damages, when ascertained, shall be paid by the county in which the State highway is located."

The Act of May 31, 1911, P. L. 468, was held to be constitutional in the case of State Highway Commissioner *v.* Chambersburg & Bedford Turnpike Co., 242 Pa. 171, it being said in the opinion (by the present Chief Justice) :

"The act in question is one of the most important pieces of legislation that has been placed upon the statute books of this State; its beneficent results will contribute to the happiness and welfare of all the people, and only an insurmountable conflict with the organic law would warrant a court in striking it down as unconstitutional.

"To build and maintain roads is an inherent right of a sovereign state which is not taken away by the Constitution of this Commonwealth. . . . The act in question applies to all parts of the Commonwealth, and provision is therein made for State roads in every county, so that all the 'main traveled roads or routes between the county seats of the several counties of the Commonwealth and main traveled roads or routes leading to the State line and between principal cities shall be known, marked, built, rebuilt, constructed, repaired and maintained by and at the sole expense of the Commonwealth, and shall be under the exclusive authority and jurisdiction of the State Highway Department and shall constitute a system of State highways:' Act of 1911, § 6. Of course, these highways cannot be alike in every particular, but under this legislation, none of them is or can be laid out, opened, altered or maintained as a local road, nor are they in any sense State roads laid out, opened, altered or maintained under local laws; on the contrary, each of them constitutes an integral part of a State system of highways and can in no wise be considered local to the particular section through which it may happen to run. Each of these highways is *ex necessitate* local, so far as the situation of any portion is concerned, but each, as a whole, may be considered State wide, for it is built and maintained for the use and benefit of all the people of the State, and its location is merely incidental to the great system of which it forms a part; the legislation for the up-building of this system deals with a matter of general concern."

How has the soverign State exercised its inherent right to build and maintain public roads or highways; which has not been taken away by the Constitution of the Commonwealth?

By the Provincial Act of Nov. 27, 1700, 2 Stat. at L. of Penna. 68; 1 Reads' Digest of Laws, 159, which authorized justices of each county court to lay out

3 D. & C.

and confirm roads, it was provided in section 2: "That no such road shall be carried through any man's improved lands but where there is a necessity for the same; and where that appears, the respective county courts shall appoint six indifferent men to view and adjudge the value of so much of such improved lands as shall be taken up for the use aforesaid, and the value thereof shall be paid to the owner of the said land out of the respective county stock."

The act mentioned, with respect to laying out roads and payment of damages, remained in force until it was repealed and supplied by the Act of April 6, 1802, P. L. 178; 3 Smith & Reed's Laws, 512; 2 Read's Digest of Laws, 36; 6 Carey & Bioren's Laws of Penna. 277. Section 14 of the act last mentioned contained this provision: "That if a public road or highway shall be carried through any land whereby the owner shall receive damage, the person who sustains such damage may, within one year, but not afterwards, make a representation, by petition, of the damage he has sustained to the Court of Quarter Sessions, and the said court shall appoint six disinterested men to view and adjudge the amount of the damage (if any) sustained, and the said amount shall be paid, after being approved of by the court, by the treasurers of the respective counties out of the county stock."

The Act of 1802 was, in turn, repealed and supplied by the Act of June 13, 1836, P. L. 551, containing the following provisions, viz.:

"Section 7. The owner of any land through which a public road shall be opened as aforesaid may, within one year from the opening of the same, apply by petition to the Court of Quarter Sessions of the proper county, setting forth the injury which he or she may have sustained thereby, and thereupon the said court shall appoint six disinterested persons to view the premises and assess the damages, if any, which such petitioner may have sustained.

"Section 8. The viewers so appointed shall make report in writing to the next Court of Quarter Sessions, and if their report be approved by the court, the amount of damages awarded shall be paid by the county treasurer out of the county stock, to the party entitled thereto."

By Resolution of May 29, 1840, P. L. 749, 752, "the 7th, 8th and 9th sections of the Act of June 13, 1836, P. L. 551, entitled 'An act relating to roads, highways and bridges,'" were "construed to apply to claims for damages in consequence of injury sustained from the location and opening of a road under the provisions of any special act of assembly, unless where the same is otherwise provided for by law."

While later laws have somewhat changed or amended the mode of procedure relative to views, and fixed the number of viewers at three, section 8 of the Act of June 13, 1836, P. L. 551, designating who shall pay the damages, is still the law of the Commonwealth. It thus appears that for at least almost two and a-quarter centuries the counties have been called on uninterruptedly to pay to land owners the damage occasioned by the appropriation of land for public roads. We have not been shown, nor have we been able to find, a single instance where the right of the Commonwealth to so require has been successfully challenged. The present State highway system of roads is no more a State-wide system of roads for the use of the public than were the public roads laid out, opened and paid for by the counties under the laws of the centuries mentioned.

Jarden v. Phila., Wilm. & Balt. R. R. Co., 3 Wharton, 502, furnishes an instance where the legislature enacted that a street in the County of Philadelphia be and was laid out to be opened by the commissioners of said county, "the damages accruing therefrom to be assessed and paid in the usual manner," and where it is said in the opinion of the court: "The county commis-

sioners, however, are to open it, and the damages are to be assessed and paid in the same manner as if it had been laid out by the court under the Act of June 13, 1836, namely, on the petition of the owner of the land, presented to the Court of Quarter Sessions, . . . and are to be paid by the treasurer out of the county stock. These are the only terms on which the damages can be assessed and paid."

In Sharett's Road, 8 Pa. 89, a case where an alley was laid out and opened in a borough, by its road and street commissioner, under a special act of assembly authorizing and requiring them to perform that duty, but which provided no mode of compensating the owners of the lands through which the alley passed for the damages thereby sustained, it was held that the special act was not unconstitutional, as it only interfered with the General Road Law of June 13, 1836, to the extent of the agency used in laying out and opening the alley, but that it did not withdraw the case from the operation of the general road law providing for the assessment of the damages sustained by the owners of lands for and by reason of laying out and opening the alley, nor deprive the Court of Quarter Sessions of the county of its power to give effect to those provisions.

And under the Resolution of May 29, 1840, the 7th, 8th and 9th sections of the Act of June 13, 1836, are extended to claims for damages in consequence of injury sustained from the location and opening of a road under the provisions of any special act of assembly, unless where the same is otherwise provided by law.

Yost's Report, 17 Pa. 524. In this case an act of assembly was passed appointing commissioners with authority to view and lay out streets in the Borough of Norristown, Montgomery County, with provision that the person or persons who should sustain any damages by the laying out or widening any street in pursuance of the act should be entitled to recover the same in the same manner as if such street or road had been laid out or widened pursuant to law by order of the Court of Quarter Sessions of said county. The County of Montgomery was held liable for the compensation. With respect to the constitutional provision against taking private property for public use without payment or security of compensation, this case distinguishes between cases where duties are imposed upon individuals instead of privileges conferred.

Schuylkill County's Appeal, 38 Pa. 459. This was an appeal by the county named from a decree of the court below, confirming the report of viewers to assess damages for the vacation of part of one street and laying out of another in the Borough of Pottsville. Exceptions by the county were, among others, that the Court of Quarter Sessions of the county was without jurisdiction, the jurisdiction being in the Borough of Pottsville, and that the county was not liable for the damages. Decided that the county was liable for the damages.

Smedley v. Erwin, 51 Pa. 445. It is said in the opinion: "But the General Road Law of June 13, 1836, embraces as well the case of a street laid out under the authority of a special law, as the case of a road or street laid out under the direction of a Court of Quarter Sessions. . . . The Act of 1836 prescribed a general system for laying out and opening roads and streets throughout the Commonwealth. All its provisions are as applicable to Philadelphia as to any other county, except so far as they are expressly declared to be inapplicable. . . . The Act of 1836 makes full and adequate provision for the assessment and recovery of whatever damages they may sustain in consequence of opening the street.

3 D. & C.

"In the exercise of their undoubted right to take private property for public use, the legislature has ordered the street to be opened. Taking land for a public highway is taking it for a public use. The degree of the public necessity is exclusively for the legislature."

Meginnis v. Nunamaker, 64 Pa. 374. Where a special "act to amend the Road Law of Bucks County" directed that the damages found and confirmed should be paid as directed by law, the reference was to the General Road Law of June 13, 1836, P. L. 551, and meant "that they should be paid out of the county treasury."

East Union Township v. Comrey, 100 Pa. 362. Where a special act of assembly directing the laying out and opening of a road makes no specific provision for compensation to the owners of land through which the road is to pass, the provisions of the Act of June 13, 1836, §§ 7, 8 and 9, P. L. 551, 556, furnish an adequate method for the recovery of such damages.

Opening of Second Avenue in the Borough of Conshohocken, 7 Pa. Superior Ct. 55. Street laid out in the borough mentioned under special act relating to the borough, which act provided "the person or persons, company or corporation who shall sustain any damages by laying and opening any such street, road, lane or alley shall be entitled to recover the same in the same manner as if such street . . . had been originally laid out by order of the Court of Quarter Sessions of said county under the general road laws of this Commonwealth." Thereunder viewers were appointed and the damages assessed, the county commissioners having due notice of the view, at which one of their number and their attorney appeared and took part in the proceedings. They filed no exceptions to the report, which was confirmed absolutely. To a petition for a mandamus to enforce payment the county commissioners filed an answer, which the court held to be insufficient. Decree affirmed and appeal of county commissioners dismissed.

Woodward v. Fayette County, 258 Pa. 375. Where a road is laid out and opened in a township of the second class on petition of taxpayers in proceedings under the Act of June 13, 1836, P. L. 551, and its supplements, the county, and not the township, is liable for damages done to property through which the road passes.

Similar illustrations with respect to the sovereign right and power of the Commonwealth to require the building of bridges at the expense of the respective counties might be multiplied from the legislation and decisions during the centuries mentioned; but deeming it non-essential to go into that in detail, we are content to merely quote the following from the opinion by Judge Linn in the case of Schuylkill County v. The Public Service Commission, 77 Pa. Superior Ct. 504 (510), viz.: "The State may, of course, authorize a county to build and pay for bridges in specified circumstances, and has done so, but that does not prevent the Commonwealth from also requiring the county to pay, in whole or in part, for the construction of bridges in other circumstances."

The Act of May 31, 1911, P. L. 468, did not relieve counties from the maintenance and reconstruction of county bridges which were on the lines and formed parts of State highways: Com. ex rel. v. Bird, 253 Pa. 364.

A close parallel in principle to the case in hand is found in and under "The Public Service Company Law" of July 26, 1913, P. L. 1374 (which is held to be constitutional: Relief Electric Light, Heat and Power Co.'s Petition, 63 Pa. Superior Ct. 1; Jenkins Township v. Public Service Commission, 65 Pa. Superior Ct. 122; Perry County T. & T. Co. v. Public Service Commission, 69 Pa. Superior Ct. 529; Wilkinsburg Borough v. Public Service Commission,

72 Pa. Superior Ct. 423; McKeesport v. Pittsburgh Rys. Co., 72 Pa. Superior Ct. 435; Foltz v. Public Service Commission, 73 Pa. Superior Ct. 24), under which it has been decided that a township may be required to pay a portion of the cost of the alteration and relocation of a bridge in the township, carrying a State highway over the tracks of a railroad company which has been declared dangerous by the Public Service Commission and ordered to be changed: Paradise Township v. Public Service Commission, 75 Pa. Superior Ct. 208; that where the Public Service Commission found a grade crossing of railroad and State highway in a township to be dangerous, required a relocation of the State highway and vacated a part of the previously existing highway, the township was rightly assessed with a part of the cost: Salem Township v. Public Service Commission, 76 Pa. Superior Ct. 374; and that a county may be required to pay a portion of the cost of the alteration and relocation of the crossing of a State highway by a railroad: Lancaster County v. Public Service Commission, 77 Pa. Superior Ct. 495; Schuylkill County v. Public Service Commission, 77 Pa. Superior Ct. 504.

In Erie R. R. Co. v. Public Service Commission, 77 Pa. Superior Ct. 196, Judge Head, in commenting on the respective powers of the State Highway Department and the Public Service Commission, said in the opinion (page 205): "Within its own proper sphere, each was the State itself."

The amendment of the 16th section of the Act of May 31, 1911, P. L. 468, made by the Act of April 6, 1921, P. L. 107, is general in its scope, embraces and applies alike to every county in the Commonwealth, and imposes no distinctive duty or obligation which is not common to all of them.

If the particular highway in question had not been taken over as a State highway, and the change or alteration which gave rise to the petitioner's claim for damages had been brought about under the general road laws, the liability of the county for the damages could not have been questioned. How is the county in any way relieved or released from that liability merely because the Commonwealth, in the exercise of its sovereignty, chose to have the change and alteration made by and through the instrumentality of the State Highway Commissioner instead of the general road laws, while making the obligation of the county the same in either case? We fail to see any legislative transgression or any imposition on the county by the use of the latter method. "Counties are very generally recognized as quasi-corporations upon which duties wholly involuntary are imposed:" Bucher v. Northumberland County, 209 Pa. 618. And it is therein quoted from Dillon on Municipal Corporations: "In the United States there is no common law obligation resting upon quasi-corporations, such as counties, townships and New England towns, to repair highways, streets or bridges within their limits, and they are not obliged to do so unless by force of statute. Even when the legislature enjoins upon corporations of this character the duty to make and repair roads, streets and bridges, and confers the power to levy taxes therefor, the general tenor of the decisions is to treat this as a public and not a corporate duty, and to regard such corporations in this respect as public or State agencies. . . ."

It is contended the act imposes a debt of the State on the county. This is not the case. It is true the section, before amendment, provided for payment of damages by the State, and that the amended section requires payment by the county in which the State highway is located, but no change of lines and locations had been made, or, so far as we know, even planned, nor had any damage been inflicted on petitioner at the time the Act of April 6, 1921, P. L. 107, was passed. It was clearly intended by the act to transfer future

3 D. & C.

Durante's Petition.

liabilities for damages from the State to the county. The damages, if any, inflicted on petitioner were since the act was passed, and if the debt is not that of the county, it cannot be said to be the debt of the State, and petitioner is without remedy. It is "the well-settled rule that, in the opening and improvement of public roads, the land owner is entitled only to such redress as is given by statute, for his claim is a matter of grace and not of constitutional right." "The Commonwealth, in the construction of public highways, is in exercise of its sovereign authority and never liable for damages unless made so by express enactment:" State Highway Route No. 72, 265 Pa. 369, affirming same case, 71 Pa. Superior Ct. 85.

Attention may be called to the provision of the act that the commissioners of the proper county are to be notified in writing of the contemplated change; whereupon, when possible, they "shall enter into an agreement with the owner or owners of said property as to amount of damage to be paid to the said owner or owners."

The county, being liable under the statute, has, of course, the right to levy and collect money with which to pay. Indeed, contingent obligations of this kind, whether likely to arise under the statute in question or under the general road laws, should be taken into consideration by county commissioners and provided for in their annual budgets. These views, we think, adequately answer the contention that the county is without legal power to raise money by taxation for the purpose of paying such damages as are in question, and could not lawfully do so. The act says, "and such damages, when ascertained, shall be paid by the county in which the State highway is located." There is no suggestion of the making of any special levy for that purpose.

For the principles therein stated we quote the following from the opinion by President Judge Rice in the case of Middletown Road, 15 Pa. Superior Ct. 167 (176), viz.: "The further objection that the act violates the constitutional provision as to uniformity of taxation is still more untenable. It is not true that the improvement of the highways contemplated by the act is in its nature local to the township or other municipal division of the county in which the particular road to be improved is located. All the people of the county derive benefit from the improvement, of the same kind and in equal degree as from the erection of county bridges. No constitutional provision is violated in imposing the burden of making and maintaining such improvements upon the people of the whole county. The argument against the law is based on the proposition that it is an attempt to impose a township burden upon the county. The error is in assuming that it is in its nature a burden which the township or other municipal division of the county ought to bear, whereas the truth is, that whether the burden shall be imposed upon them or upon the county at large is purely a matter of legislative policy."

The road whereon the change in question was made is one of the greatest of the Commonwealth's highways—The Lakes to Sea—between the Cities of Philadelphia and Erie, and of vast benefit and importance, not alone to the immediate vicinity where the change was made and to the County of Jefferson, but to the whole State, and as well outside of it.

The consideration we have given this matter satisfies us there is nothing new or novel in requiring the county to pay the damages claimed, if any, and leaves us unconvinced that in the 16th section of the Act of May 31, 1911, P. L. 468, as amended by the Act of April 6, 1921, P. L. 107, there is any "insurmountable conflict with the organic law" which "would warrant a court in striking it down as unconstitutional." Hence, the demurrer is overruled and dismissed.

Durante's Petition.

And now, Jan. 29, 1923, the prayer of the petitioner is granted, and L. G. Brosius, Samuel T. Stormer and William A. Johns are appointed viewers for the purpose set forth in the petition; order to issue in the usual form, with provision that in assessing the damages the viewers shall take into consideration the advantages derived from such road passing through the land of complainant.

From Raymond E. Brown, Brookville, Pa.